104.    Mr. Newton also submitted separate Freedom of Information Law (FOIL) requests to the NYPD for certain items of evidence relating to his case, including the above three items.

105.    On April 23, 1997, in response to the aforementioned requests for the evidence, ADA Robert L. Moore wrote to Judge Grubin and stated the following:

> Upon information and belief, property retained as evidence by the New York City Police Department (for cases prosecuted in Bronx County) is either stored within the Property Clerk's facility at 4715 Pearson Place, Queens New York, or in the facility located within the Bronx County Criminal Court at 215 East 161st Street, Bronx, New York. *According to a representative of the Police Department Property Clerk at the Queens facility, items (1) and (2), listed above, were not found at the location following a search on this date and records of disposition are not available. According to a representative of the Bronx Borough Property Clerk, those items were not found in the Bronx facility following a search on this date, and records of disposition are not available. As previously noted, the petitioner has been advised, in prior state proceedings, that the Rape Kit (as listed above), could not then be located.* I have been advised that item (3), as listed above, is presently stored at the Pearson Place facility. I have requested on this date, by fax, that the property (item [3]) be maintained, pending final disposition of this petition.

Letter from ADA Moore to Magistrate Judge Grubin dated April 23, 1997 (emphasis added).

106.    No documentation has ever been produced to support ADA Moore's statement that a "search" was, in fact, performed by the NYPD for the three items of evidence, but ADA Moore's letter provides the first official statement of the NYPD, the Bronx District Attorney's Office and The City that the rape kit and sneaker evidence (and the records relating to their disposition) had been lost. Some John or Jane Doe in the NYPD's Property Clerk's Office apparently advised ADA Moore that a "search" had been performed for the evidence and his/her transfer of this information to Magistrate

Judge Grubin and Mr. Newton now began to build a false and inaccurate record relating to the rape kit and sneaker evidence.

107.    The NYPD officials in charge of the Pearson Place Warehouse should have known that it would be odd for the Property Clerk to keep VJ's soiled clothing, but discard or destroy other important pieces of evidence relating to the same case. The Bronx District Attorney's Office also should have found this peculiar. Nevertheless, due to the callous disregard of the Defendants, an actual physical search for the rape kit and sneaker evidence was apparently never requested or performed.

108.    On July 9, 1998, Mr. Newton's attorneys filed a new motion requesting DNA testing (based on improved DNA testing techniques) on VJ's clothing, including her jeans; in connection with this motion, Mr. Newton's attorneys also renewed Mr. Newton's request for the production of the rape kit and his sneakers.

109.    As to the renewed request for the rape kit and sneakers, the result of the previous "search" for the evidence (that it could not be found) was reiterated and reinforced in an Affirmation signed by ADA Rafael Curbelo dated August 25, 1998:

> . . . numerous conversations with Ms. Kiely and Police Officer Haskins of the Property Clerk's Office at Pearson Place, Queens County, none of the above items [including the rape kit] could be located. Upon information and belief, the source being the same, Vitulo [rape] Kits were preserved starting in 1988, and other items were likely destroyed in accordance with standard Police Department procedure.

Affirmation of ADA Rafael Curbelo in Opposition to Alan Newton's Renewed Motion for DNA Testing, dated August 25, 1998.

110.    One week later, ADA Curbelo dispatched a letter to Mr. Newton's attorneys advising, however, that he had received a telephone call from a Ms. Kiely of the NYPD Property Clerk's Office at Pearson Place who had advised him, contrary to the

-32-

advice he had previously been given and that he had provided to the court, that VJ's

clothing had been located. Letter from ADA Rafael Curbelo to Jorge Guttlein, Esq. dated

September 1, 1998. ADA Curbelo's September 1 letter attached a letter from Sergeant

Patrick J. McGuire of the NYPD dated August 26, 1998 (responding to ADA Rafael

Curbelo's request for the clothing, rape kit and sneaker evidence). Sergeant McGuire

advised:

> Storage # 85B696
> Preprint #B744512 [this is the same as the voucher #]
> Type: clothing
>
> The above voucher is currently in storage at the Property Clerk Storehouse
> located at Pearson Place (Bin # 2002-1)

> storage # 84B24723          storage #84B19041
> preprint#B744556           preprint # B744423
> [pair of men's sneakers]    [cigarette box, mirror and rape kit]

> *The above two vouchers are currently not in its [sic] last listed storage
> location.* Property generally is removed from its storage location for one of two
> reasons. The first is "out to court," and the second is destruction. Items that go
> out to court are indicated on the original invoice which is stored in the active files.
> Currently there is no original voucher in the active file, therefore it must have
> been destroyed. Items that are destroyed are indicated on the original voucher and
> then filed in the closed files. Unfortunately there was a fire in our facility during
> the summer of 1995 which destroyed these files. *This makes it impossible to say
> when and if the above property was destroyed. The only other means of
> researching the final disposition of these vouchers is through the Bronx Property
> Clerk office. Unfortunately, this is also a dead end. The N.Y.P.D. Records
> Section in connection with the Legal Bureau authorizes the Property Clerk to
> destroy inactive records more than six (6) years old.* As you well know, the
> Bronx Property Clerk Office has a lack of space and therefore they keep to that
> procedure.

Letter from Sergeant Patrick J. McGuire (NYPD) to ADA Rafael Curbelo dated August

26, 1998 (emphasis added).

111. Sergeant McGuire's letter contains many inconsistencies and illogical

claims. Sergeant McGuire's explanation implies that (1) since the two relevant vouchers

were not in the "active" file and (2) since the "closed" files are destroyed after six years, then, (3) the evidence itself was destroyed. Sergeant McGuire suggests that evidence necessarily disappeared with the original voucher/receipt/paper marker of the evidence. His reasoning suggests that he may have never physically searched the Pearson Place Warehouse for the missing rape kit and sneakers (without a person physically searching the original storage location, and with no written indication of the kit's destruction, there was no way of knowing whether the evidence was truly destroyed).

112.    On September 9, 1998, the Court granted a portion of Mr. Newton's July 9, 1998 motion, and pursuant to court order, the NYPD delivered VJ's clothing to the New York County Medical Examiner's Office ("OCME"). The OCME performed an initial screening of the clothing on October 16, 1998, without the knowledge of Mr. Newton or his counsel. On October 27, 1998, the prosecutor informed the Bronx Supreme Court that the OCME test result was "negative" for semen on the clothing. Mr. Newton then requested that he be permitted to have his own experts test the clothing. The Court granted this request, and Mr. Newton's experts also returned a "negative" result: neither test found any usable semen on the jeans. Sergeant McGuire's letter thereafter served to delay a true search for the missing rape kit for another seven years.

### Mr. Newton's Renewed FOIL Requests to the NYPD

113.    In June 2002, frustrated by his then futile attempts to secure the rape kit evidence from the NYPD, Mr. Newton filed a *pro se* Freedom of Information Law ("FOIL") request with the OCME for the rape kit in the hope that the OCME had retained it after some early testing (even though Mr. Newton knew that the rape kit was supposed to be in the storage facility at Pearson Place). His FOIL request was denied because of an

exemption from disclosure that applies to the records of the OCME. Mr. Newton then, nevertheless filed similar FOIL requests for the rape kit with the NYPD and the Bronx District Attorney's Office. These requests also proved futile.

### The Pearson Place Warehouse Routinely Loses Critical Evidence

114.    A veritable plethora of New York City criminal cases have been thwarted by shoddy practices at the NYPD's Pearson Place Warehouse. The Pearson Place Warehouse is currently operated (and has been operated for many years) under the supervision of Defendant Jack J. Trabitz; he is in charge of the NYPD's Property Clerk Division.

115.    In addressing individual cases of lost evidence from the NYPD's Pearson Place Warehouse (in cases remarkably similar to Mr. Newton's), the Innocence Project, the entity known for obtaining hundreds of post-conviction exonerations based on DNA evidence, states the following on its website:

> In New York City, 50% of cases the Innocence Project closed in the last 10 years were closed because of reports that evidence was lost or destroyed (according to a preliminary study of Innocence Project cases from 1996 to 2006) at Pearson Place Warehouse, which stores evidence for all crimes in the five boroughs of New York City.
>
> Several of these closed cases involve Sergeant Patrick McGuire, who notified the Innocence Project in writing that evidence in the cases did not exist at Pearson Place Warehouse – just as he did in Alan Newton's case before the evidence was finally located at the facility, eventually leading to his exoneration.
>
> Following are details on six of the Innocence Project's closed cases in New York City, including three where Sgt. McGuire claimed in writing that evidence no longer exists. (Names of clients and victims in these cases have been omitted to protect their privacy.) These are among the cases for which the Innocence Project is now asking NYPD Commissioner Ray Kelly to conduct new evidence searches at Pearson Place Warehouse.
>
> **John Doe #1 (Bronx)**

In 1989, Doe was convicted of raping and robbing a woman in the Bronx in 1987. The perpetrator grabbed the victim from behind while she was walking home from the bus stop, dragged her into a nearby apartment building, and raped her on the rooftop. An ambulance then took her to a hospital where a rape kit was collected. The victim was allowed to go to the bathroom and clean herself before the rape kit was taken. Doe was convicted, based largely on the victim's identification of him.

The Innocence Project took the case and spent nearly four years trying to locate the rape kit and the victim's clothing to determine whether DNA testing could prove Doe's innocence. Bronx Assistant District Attorney Eliza Koenderman worked with the Innocence Project to try to locate the evidence. She requested the evidence from every agency that might have it, and secured documentation from all of the agencies claiming that they did not have custody of the evidence. The case was closed in 2005 due to lack of evidence for DNA testing.

**John Doe #2 (New York)**

In 1985, Doe was convicted of rape and robbery. He was incarcerated for 14 years, and is currently serving the remainder of his sentence on parole.

The case against Doe was based primarily on the victim's identification of him. During the trial, the prosecution also submitted testimony that biological evidence was identified in the rape kit taken from the victim immediately following the attack. The Police Laboratory Serology Section, however, did not test the samples to determine the blood type (DNA testing was not available at the time).

The Innocence Project took Doe's case in 1995. As a result of the Innocence Project's litigation, the Manhattan District Attorney's Office conducted a search for biological evidence in the case. The DA's office worked directly with officials at several NYPD units involved in the case – including the serologist from Doe's trial, the lab that examined hair evidence for the trial, and the evidence division that is responsible for receiving and returning all evidence examined in the NYPD lab – and each of them formally claimed that they no longer had the evidence from the case.

The Innocence Project ultimately closed the case after pursuing the evidence for eight years.

**John Doe #3 (Queens)**

In 1987, a woman was assaulted on the Long Island Railroad as she was returning to her home from Manhattan. The victim was raped in the train's bathroom and was unable to see her assailant because the lights in the bathroom were not working. Prior to the assault, the victim had interacted with Doe because he was the train's conductor.

The victim's sister picked her up at the train station and took her to the police station. The victim then went to the hospital, where a rape kit was collected. Two days after the assault, the victim identified Doe as the man who attacked her on the train. Although she signed a complaint identifying Doe as her assailant, in court the victim conceded that she could not have seen her attacker, and that she had misunderstood the complaint she signed.

No biological evidence was admitted at Doe's trial. He was convicted and sentenced to 4 to 12 years in prison. Doe's conviction was overturned, but later reinstated.

The Innocence Project took Doe's case in 1995. Although Thomas was out of prison on parole, he asked the Innocence Project to continue seeking DNA testing that could clear his name. In response to an Innocence Project motion, the court ordered the hospital, the MTA police, and Pearson Place Warehouse to conduct searches for biological evidence in the case. Neither the police nor the hospital had any biological evidence, and the Innocence Project subsequently secured a court order for any documents the hospital or police had relating to the case. Those documents did not provide any information about biological evidence in the case. In 2000, after nearly a decade seeking evidence, the Innocence Project closed Doe's case.

**Cases Involving Sgt. Patrick McGuire:**

**John Doe #4 (Bronx)**

In 1980, a woman was raped in the lobby of her apartment building. The perpetrator stole the victim's ID card and several of her other belongings, and he later made threatening phone calls to her. Later, he returned to her home and cut her head with a piece of glass.

The victim identified Doe as her attacker. Although biological evidence was collected during the police investigation, it was not tested or admitted at Doe's trial. In 1981, Doe was convicted of rape and sodomy.

The Innocence Project took Doe's case in 2001. Along with Doe's court-appointed attorney, the Innocence Project sought access to physical evidence in the case from the hospital and police. No biological evidence was located, and Sgt. McGuire officially notified the Innocence Project that the evidence was destroyed in a fire.

**John Doe #5 (Kings)**

Doe was convicted in January 1984 of rape in the first degree, sodomy in the first degree, and assault in the third degree. His conviction was based largely on the

victim's identification during a police lineup. Although there was a rape kit taken after the attack, it apparently was not presented as evidence in Doe's trial.

The Innocence Project took Doe's case in 1995. Knowing that if evidence from Doe's case still existed, it would be stored at Pearson Place Warehouse, the Innocence Project pursued the evidence at the facility. Sgt. McGuire helped search for the evidence. After no evidence was recovered from the on-site visit, Sgt. McGuire contacted the lab where the evidence may have been sent. The lab did not have the evidence. Sgt. McGuire had consistently maintained that the evidence was probably destroyed during a mass destruction of unclaimed property in 1992. Finally, in a 1997 letter, Sgt. McGuire officially notified the Innocence Project that the evidence in Doe's case had been destroyed. (Sgt. McGuire said that, complying with police procedure, his letter about the evidence was reviewed and approved by his supervisor.) Based on Sgt. McGuire's letter claiming that the evidence was destroyed, the Innocence Project closed Doe's case in 1997.

**John Doe #6 (Kings)**

In July of 1985, Doe was convicted of murder, rape, sodomy, and several weapons possessions charges. When a man and two women who were sitting in a park in East New York, a man armed with a gun approached them and demanded their money and oral sex from one of the women. The perpetrator tied up the man. The woman struggled with the perpetrator, who shot and killed her. The assailant then raped the other woman.

When Doe was arrested, he was wearing underwear that were bloodstained (he said that this was because he suffers from a kidney infection). The Innocence Project took Doe's case and sought testing on his underwear, as well as on the victim's rape kit and clothing. In 1997, after a search for evidence, the Innocence Project received written notification from McGuire's that the biological evidence from Doe's case was destroyed, and the case was closed.

Innocence Project Website, http://www.innocenceproject.org/Content/397.php.

116.    It is widely known that NYPD's inventory and storage operations at the Pearson Place are, and have been for many years, beyond crude and outdated. Despite widespread criticism of the condition of the Pearson Place warehouse, and internal reports suggesting the need for remedial measures, none have been undertaken to modernize the system for finding old (pre-1990's) evidence.

117.    It is also widely known that the NYPD employed questionable policies and practices with regard to the registration, storage, control and production of evidence to criminal defendants.  Some of these questionable practices and procedures are have been detailed by the Innocence Project in the quoted material above.

**The Rape Kit Is Finally Found at the Pearson Place Warehouse – 11 Years Later**

118.    Mr. Newton eventually convinced the Innocence Project to assist him in one final quest for the long lost rape kit.  Attorney Vanessa Potkin of the Innocence Project dispatched an e-mail to ADA Elisa Koenderman requesting that the Bronx District Attorney's Office and NYPD make one last, good-faith effort to locate the rape kit.  The NYPD Property Clerk's office was asked to assign someone who would individually search for and retrieve the rape kit from its storage bin; this request advised the District Attorney's Office and NYPD of the same evidence bin/barrel number that Mr. Newton had been providing since 1994.

119.    This time, rather than cite merely to the voucher, ADA Koenderman requested a direct physical examination of storage bin number 84B19041.  This time, the Property Clerk's office found the missing rape kit -- exactly where it was supposed to be for the last eleven years -- in storage bin number 84B19041.  The rape kit apparently had never been moved from its original storage bin location.    Instead of making a direct physical search of the Pearson Place Warehouse storage bin where the evidence was designated to be, agents, servants and representatives of NYPD (including, but not limited to, Kiely, Haskins, McGuire *et al.*) had previously and wrongfully reported back to the Bronx District Attorney's Office that the loss of the paper vouchers indicated that the evidence had been destroyed.

120.    Considering the information supplied by NYPD personnel (including Kiely, Haskins, and McGuire), it seems clear that no NYPD official ever actually took the step of looking for the missing evidence beyond looking up a bare file entry connected to the voucher numbers; they performed merely a cursory review of the existing records and files attached to voucher number B744483, found nothing, and concluded that the evidence had been destroyed. The fact that the jeans evidence from the case still existed should have alerted any number of people to the possibility that the rape kit had not been destroyed in accordance with any specific policy on dated evidence: under any such policy, all of the evidence from the case would have been destroyed contemporaneously and, therefore, the existence of some parts of the evidence implied the existence of the rest.

121.    Because the NYPD acts as the final gatekeeper of evidence at Pearson Place, any representations its members made to the Bronx District Attorney's Office effectively set the final status of the evidence. Between 1994 and 2005, had the NYPD made an in-person search of storage bin number 84B19041, rather than a cursory search for the voucher (number B744483) associated with the storage location, they would have found VJ's rape kit. Mr. Newton's request for DNA testing could have led to his exoneration for the rape of VJ twelve years earlier – in 1994.

### Mr. Newton's Conviction Is Vacated

122.    The rape kit, once found, was submitted to the New York City Office of the Chief Medical Examiner, Department of Forensic Biology ("OCME"), and the evidence was split to enable replicate testing by an independent laboratory. In April 2006, Forensic Science Associates ("FSA") obtained a full male STR DNA profile from

the testing of the vaginal and cervical swabs. The OCME's testing of the cervical swab, completed in March 2006, yielded a partial profile, consistent with FSA's result. New reference samples were collected from Mr. Newton and both FSA and the OCME generated Mr. Newton's DNA profile; it was compared to the profile obtained from the spermatozoa in the rape kit. The DNA testing conclusively excluded Mr. Newton as the source of the spermatozoa recovered from the victim immediately after the rape.

123. On July 6, 2006, Justice John Byrne of the Supreme Court of the State of New York (Criminal Term), County of Bronx, granted the joint motion of the Bronx County District Attorney's Office and defense counsel and vacated Mr. Newton's conviction pursuant to CPL § 440.10 (1) [newly discovered evidence], and dismissed the underlying accusatory instrument.

### Mr. Newton's Damages

124. Alan Newton suffered substantial injuries and/or damages as a result of his unjust conviction and imprisonment, including but not limited to the following: twenty-two (22) years of physical suffering, pain, mental anguish, emotional distress, nervousness, depression, sleep disturbance, shame, embarrassment and humiliation caused by his arrest, conviction and the loss of his freedom; loss of enjoyment of life; injury to his reputation; loss of friends; the loss of his family's company during his incarceration (both of his parents died during his incarceration); psychological injury caused by his lengthy incarceration; loss of earnings/ pecuniary loss, and the reasonable and necessary expenses associated with the defense he was compelled to present in the criminal action (including, but not limited to, his attorney's fees).

## LEGAL CLAIMS

### FEDERAL LAW CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### AGAINST INDIVIDUAL NYPD DEFENDANTS FOR THEIR
### WRONGFUL VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER
### COLOR OF STATE LAW (UNDULY SUGGESTIVE I.D. PROCEDURES)

125.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 124, inclusive, with the same force and effect as if set forth at length herein.

126.    Defendants Newbert, Galligan, Hartfield, Ryan, Leho, O'Toole and various NYPD John/Jane Does, acting within the scope of their employment and under color of state law, conducted unduly suggestive identification procedures that were highly likely to, and in fact did, lead two eyewitnesses to misidentify Plaintiff, including without limitation:

a.    Failing to determine the VJ's competency to describe and/or identify her assailant in light of her condition at the time of the alleged crime (she was medicated and intoxicated);

b.    Failing to elicit detailed descriptions of VJ's assailant from the two eyewitnesses before showing them photographs and exposing them to lineups;

c.    Showing the eyewitnesses photo arrays in which Plaintiff's photograph was noticeably different from all other photographs;

d.    Showing the eyewitnesses photo arrays including Plaintiff's photograph at their homes and work places (or a hospital) prior to the eyewitnesses viewing Plaintiff in a physical lineup;

    e.     Pressuring the eyewitnesses to make an identification of Plaintiff in spite of eyewitness statements that they "were not sure";

    f.     Informing the eyewitnesses of Plaintiff's identity, address, and other identifying characteristics before obtaining a full description of VJ's assailant from them (and before the physical lineup and display of photographs);

    g.    Informing the eyewitnesses that Plaintiff, a prime suspect in the rape of VJ, would be one of the people in the physical lineup;

    h.    Informing the eyewitnesses that Plaintiff, a prime suspect in the rape of VJ, had been charged with another assault in the County of Bronx;

    i.     Conducting a woefully defective voice identification procedure with VJ that permitted her to view each of the participants as they spoke;

    j.     Conducting a woefully defective voice identification procedure with VJ that required Plaintiff, and Plaintiff alone, to speak a requested phrase several times more than the other participants;

    k.    Purposely provoking Plaintiff during the voice identification procedure with VJ so that VJ would see and hear Plaintiff, and Plaintiff alone, speak in an angry and loud tone; and

    l.     Engaging in post-identification suggestion by telling the eyewitnesses who had tentatively identified Plaintiff that the eyewitnesses had selected the right person and that "the other" witness also had identified him.

127.    Defendants Newbert, Galligan, Hartfield, Ryan, Leho, O'Toole and various NYPD John/Jane Does committed these and other unduly suggestive acts

intentionally and/or with reckless disregard to Mr. Newton's clearly established constitutional rights and the obvious risks of inducing the eyewitnesses to misidentify. These actions were taken despite other evidence indicating that Mr. Newton was innocent. No reasonable police officer would have believed these procedures were lawful or would produce a reliable identification.

128.  As a direct and proximate result of these unduly suggestive procedures, two eyewitnesses misidentified Mr. Newton as VJ's assailant both before and at trial, in violation of Mr. Newton's constitutional right to a fair trial and right not to be deprived of liberty without due process of law.

129.  The aforesaid conduct operated, *inter alia*, to deprive Mr. Newton of important and well established rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and rights established by the Constitution of the State of New York, including Plaintiff's right not be significantly detained pretrial except pursuant to a fair and reliable determination of probable cause, his right to be free from bad-faith prosecution, his right to a fair trial, his right to freedom from the deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment. Such misconduct also directly and proximately caused his arrest, his indictment, his conviction, his sentence and his incarceration for over twenty-two years.

130.  Due to the unconstitutional misconduct of Defendants Newbert, Galligan, Hartfield, Ryan, Leho, O'Toole and various NYPD John/Jane Does, Alan Newton suffered decades of wrongful imprisonment and endured substantial physical, emotional and pecuniary injuries detailed above.

131.    Each of the aforementioned Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

132.    Thus, pursuant to 42 U.S.C. § 1983, Plaintiff Alan Newton now demands judgment against Defendants Newbert, Galligan, Hartfield, Ryan, Leho, O'Toole, and various NYPD John/Jane Does, for compensatory damages totaling One Hundred Million Dollars ($100,000,000.00), plus attorney fees, costs, expenses, and any other and further relief this Court deems just and proper.

## SECOND CAUSE OF ACTION
## AGAINST INDIVIDUAL NYPD DEFENDANTS
## FOR THEIR WRONGFUL VIOLATION OF
## PLAINTIFF'S CIVIL RIGHTS UNDER COLOR OF STATE LAW
## (FALSE ARREST & IMPRISONMENT & MALICIOUS PROSECUTION)

133.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 132, inclusive, with the same force and effect as if set forth at length herein.

134.    Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, acting within the scope of their employment and under color of state law, wrongfully arrested and detained Mr. Newton pursuant to legal process knowing: (a) that the only evidence -- two eyewitness identifications -- linking Mr. Newton to the crime alleged were highly suspect; (b) that they had collected physical evidence that they failed or refused to test, and then "lost" the evidence so no one else could test it; (c) that VJ had originally identified another man named "Willie" as her assailant; (d) that a man named "Willie" might be linked to the crime scene and the type of automobile used by the assailant; (e) that Mr. Newton had an apparent alibi, and (f) that there was an absolute absence of any physical evidence linking Mr. Newton to the

victim or the crime scene. In short, the aforementioned NYPD police officers knew or should have known that they did not have probable cause for an arrest, detention and prosecution of Plaintiff Alan Newton.

135.    First, neither eyewitness provided anything close to a satisfactory identification as seen above. VJ was intoxicated, medicated and, by her own admission, did not obtain a good and clear look at her assailant. The only other witness, Ms. Gonzalez, saw VJ's assailant for less than a minute or so at the front counter of her store.

136.    Second, Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does collected physical evidence from two crime scenes, but failed to perform or ensure follow up testing to confirm Mr. Newton's guilt or innocence. In particular, these Defendants collected blood, semen and hairs from the victim, and sneakers from Mr. Newton, but failed to perform testing on these items to determine whether any links existed between the victim, Mr. Newton or some third person. These same Defendants then proceeded to hide, secrete or lose this physical evidence in reckless disregard of Mr. Newton's constitutional rights.

137.    Third, Defendants Newbert, Galligan, Hartfield, Ryan, O'Toole, and various NYPD John/Jane Does met with and interviewed a witness (Ms. Deborah Chamberlin) who offered information about a named "Willie" who may have been VJ's true assailant. These Defendants, however, wrongfully and with reckless disregard for Mr. Newton's constitutional rights, dismissed the information offered by Ms. Chamberlin as "unreliable" and failed to reveal the true identity of this witness and her potentially exculpatory information from Mr. Newton and his attorneys. In fact, these Defendants,

individually or collectively, purposely lost, destroyed or secreted notes made by NYPD investigators during their interview of Ms. Chamberlin.

138.    Fourth, Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, never gave Mr. Newton's alibi any weight whatsoever. They never even bothered to interview the people Mr. Newton was with at the times of the alleged crime.

139.    Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, maliciously and/or without probable cause initiated the prosecution against Mr. Newton by wrongfully pressuring eyewitnesses into falsely identifying him as the rapist, by submitting deliberate fabrications about the results of tests performed (or not) on physical evidence and the credibility of third-party witnesses, by ignoring exculpatory alibi information and omitting (and thereafter destroying) other exculpatory information.

140.    Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, misled the District Attorney's Office for Bronx County which authorized the arrest of Mr. Newton by presenting deliberate fabrications and making material omissions of exculpatory evidence.

141.    Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, maliciously continued the prosecution by improperly and wrongfully pressuring the eyewitnesses into falsely identifying Mr. Newton as the rapist, by deliberately (or with reckless disregard) failing to investigate any of the information that led away from Mr. Newton, as well as by hiding their misconduct and destroying evidence.

142.    The aforesaid conduct operated, *inter alia*, to deprive Mr. Newton of important and well established rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and rights established by the Constitution of the State of New York, including Plaintiff's right not be significantly detained pretrial except pursuant to a fair and reliable determination of probable cause, his right to be free from a bad-faith prosecution, his right to a fair trial, his right to freedom from the deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment. Such misconduct also directly and proximately caused his arrest, his indictment, his conviction, his sentence and his incarceration for over twenty-two years.

143.    The intentional conduct and/or reckless disregard of Mr. Newton's constitutional rights by Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, makes these Defendants liable to Mr. Newton under 42 U.S.C. § 1983.

144.    As a direct and proximate result of the wrongful conduct of Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole and various NYPD John/Jane Does, Mr. Newton was falsely arrested, falsely imprisoned, maliciously prosecuted, forced to endure an unfair trial and wrongful conviction and then wrongfully imprisoned for over two decades. During all of these events, Mr. Newton endured substantial physical, emotional and pecuniary injuries detailed above.

145.    Each of the aforementioned Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

146.   Thus, pursuant to 42 U.S.C. § 1983, Plaintiff Alan Newton now demands judgment against Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, for compensatory damages totaling One Hundred Million Dollars ($100,000,000.00), plus attorney fees, costs, expenses, and any other and further relief this Court deems just and proper.

**THIRD CAUSE OF ACTION
AGAINST INDIVIDUAL NYPD DEFENDANTS
FOR THEIR WRONGFUL VIOLATION OF PLAINTIFF'S
CIVIL RIGHTS UNDER COLOR OF STATE LAW (FAILURE TO
INVESTIGATE & DELIBERATE SUPPRESSION OF EVIDENCE)**

147.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 146, inclusive, with the same force and effect as if set forth at length herein.

148.   Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, acting within the scope of their employment and under color of state law, deliberately failed to conduct a constitutionally adequate investigation of the crime of which Alan Newton was charged (and/or acted with reckless disregard of Plaintiff's constitutional rights), including without limitation the following:

   a.   Failing to obtain a full and complete description of VJ's assailant from the two eyewitnesses before beginning photo displays and physical lineups;

   b.   Failing to question the vague and "evolving" description of the rapist offered by VJ;

   c.   Failing to investigate fully and then disclose to Mr. Newton and his attorneys that VJ was an epileptic who had consumed a substantial

amount of alcohol on the evening in question in direct contravention of her doctor's instructions (very unreliable witness);

d.    Failing to investigate VJ's original claim that a man named "Willie," who drove a blue and white Pontiac Grand Prix, raped her;

e.    Failing to investigate the claims of a third-party witness, Deborah Chamberlin, that a "local" man named "Willie" could be linked to the crime scene and a blue and white Pontiac Grand Prix automobile and, thereafter, failing to turn over any exculpatory materials relating to the Chamberlin interview and Chamberlin background check to Mr. Newton or his attorneys;

f.    Failing to test the blood, semen and hair recovered from the victim's body to determine whether any of this physical evidence confirmed the guilt or innocence of Mr. Newton;

g.    Failing to perform tests on sneakers taken from Mr. Newton at or around the time of his arrest to determine: (i) whether the treads on those sneakers matched the sneaker tread marks found on the victim's body and clothing, and (ii) whether there was any blood on the sneakers that could be traced to the victim (the sneakers were allegedly lost by the NYPD and the results of testing, if any, on the sneakers was never disclosed to Mr. Newton or his attorneys);

h.   Failing to "seal off" the crime scene in the building where the second rape occurred to ensure that the scene was not contaminated by investigators (and to ensure that fingerprints could be found; no fingerprints allegedly were collected at the scene)

i.   Failing to record the level of confidence of the eyewitnesses in their identifications of Mr. Newton after they allegedly selected his photo in arrays and picked him out of lineups;

j.   Failing to conduct fair, proper and untainted visual and voice identification procedures for the two eyewitnesses (who offered the only evidence in support of the charges asserted against Mr. Newton);

k.   Failing to investigate the merits of Mr. Newton's alibi defense by interviewing those allegedly with him at or around the times the crimes were committed; and

l.   Failing to seek or obtain a search warrant to determine: (i) whether the clothing on the assailant described by VJ might be found within Mr. Newton's apartment, or (ii) whether any clothing found within Mr. Newton's apartment had VJ's blood on it.

149.   Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, acting within the scope of their employment and under color of state law, deliberately failed to disclose to the Bronx District Attorney's Office material information that:

a.    They had had repeatedly employed unduly suggestive conduct to induce the two eyewitnesses to misidentify Alan Newton at physical and photographic identification procedures, *viz*:

    i.    Showing the two eyewitnesses photographs and photo arrays in which Mr. Newton's photograph was noticeably different from all other photographs;

    ii.    Showing the two eyewitnesses photographs and photo arrays, including Mr. Newton's photograph, prior to their viewing him in a physical lineup (where he became the only common denominator);

    iii.    Deliberately failing to document such repeated displays of Mr. Newton's photograph to the two eyewitnesses;

    iv.    Pressuring the two eyewitnesses to make an identification of Mr. Newton;

    v.    Providing the two eyewitnesses with suggestive information about Mr. Newton prior to the physical lineups including his identity, his address and arrest history;

    vi.    Advising the two eyewitnesses that one of the people in the physical lineup, Mr. Newton, was the prime suspect and that the other eyewitness had already identified him

    vii.    Engaging in post-identification suggestion by telling the

two eyewitnesses that they had selected the right person and, further, that the other eyewitness also had identified Mr. Newton;

b. Failing to advise that they had not fully investigated the claims of a third-party witness, Deborah Chamberlin, that a "local" man named "Willie" could be linked to the crime scene and a blue and white Pontiac Grand Prix automobile and, thereafter, failing to turn over any exculpatory materials relating to the Chamberlin interview;

c. Failing to advise that they had not tested the blood, semen and hair recovered from the victim's body to determine whether any of this physical evidence confirmed the guilt or innocence of Mr. Newton; and

d. Failing to advise that they had not tested the sneakers taken from Mr. Newton at or around the time of his arrest to determine: (i) whether the treads on those sneakers matched the sneaker tread marks found on the victim's body and clothing, and (ii) whether there was any blood on the sneakers that could be traced to the victim (and that the sneakers were lost by the NYPD).

150.    The aforesaid conduct operated, *inter alia*, to deprive Mr. Newton of important and well established rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and rights established by the Constitution of the State of New York, including Plaintiff's right not be significantly

detained pretrial except pursuant to a fair and reliable determination of probable cause, his right to be free from a bad-faith prosecution, his right to a fair trial, his right to freedom from the deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment. Such misconduct also directly and proximately caused his arrest, his indictment, his conviction, his sentence and his incarceration for over twenty-two years.

151.    As a direct result of the deliberate (or reckless) failure to conduct a constitutionally adequate investigation and the deliberate (or reckless) suppression of material favorable evidence to Mr. Newton, Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, caused Mr. Newton to endure a wrongful arrest and an unfair trial in violation of his clearly established constitutional rights; Mr. Newton was maliciously prosecuted, forced to endure a wrongful conviction and then wrongfully imprisoned for over two decades. During all of these events, Mr. Newton endured substantial physical, emotional and pecuniary injuries detailed above.

152.    Each of the aforementioned Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

153.    Thus, pursuant to 42 U.S.C. § 1983, Plaintiff Alan Newton now demands judgment against Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, and various NYPD John/Jane Does, for compensatory damages totaling One Hundred Million Dollars ($100,000,000.00), plus attorney fees, costs, expenses, and any other and further relief this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**AGAINST INDIVIDUAL DEFENDANTS**
**FOR THEIR WRONGFUL VIOLATION OF**
**PLAINTIFF'S CIVIL RIGHTS UNDER COLOR OF STATE**
**LAW (LOSS OF MATERIAL, CRITICAL CRIMINAL EVIDENCE)**

154.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 153, inclusive, with the same force and effect as if set forth at length herein.

155.    Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, Sheehan, McGuire, Haskins, Kiely, Trabitz, various NYPD John/Jane Does, DA Merola, DA Johnson, ADA Freund, and various ADA John/Jane Does, acting within the scope of their employment and under color of state law, deliberately failed to register, store, preserve, maintain and control material and critical evidence relating to the crimes of which Alan Newton was charged (*i.e.*, they acted with reckless disregard of Plaintiff's constitutional rights).

156.    While Plaintiff Alan Newton was incarcerated (and/or while any conviction against him remained on file), all of the Defendants had a constitutional obligation, as officers and agents of The City and/or State of New York, to register, store, preserve, maintain and control material and critical evidence relating to the crimes of which Alan Newton was charged and convicted. See, e.g., De Shaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200 (1989) ("when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being").

157.   In fact, Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, Sheehan, McGuire, Haskins, Kiely, Trabitz, various NYPD John/Jane Does, DA Merola, DA Johnson, ADA Freund, and various ADA John/Jane Does, acting within the scope of their employment and under color of state law, took an extraordinarily cavalier attitude with respect to their constitutional obligation to preserve material and critical evidence relating to their investigation, prosecution and post-conviction incarceration of Alan Newton.

158.   With reckless disregard for Alan Newton's constitutional rights, Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, Sheehan, McGuire, Haskins, Kiely, Trabitz, various NYPD John/Jane Does, DA Merola, DA Johnson, ADA Freund, and various ADA John/Jane Does, lost and/or misplaced and/or secreted the following material and critical evidence relating to Alan Newton's convictions under Bronx County Indictment No. 2441/84:

a.   A rape kit containing, among other things, semen taken from the body of VJ after her rape (this kit was first discovered "lost" by the NYPD Property Division in 1994 and was not produced to Mr. Newton until 2005);

b.   Mr. Newton's sneakers, taken from him in June of 1984 by NYPD investigators, were "lost" and never returned to him despite repeated requests;

c.   The notes taken by Defendants Newbert, Galligan, et al., relating to their interview of a third-party witness, Deborah Chamberlin,

that a "local" man named "Willie" could be linked to the crime

scene and a blue and white Pontiac Grand Prix automobile;

d.     The "criminal background" information on Deborah Chamberlin

that allegedly allowed Defendants Newbert, Galligan, et al., to

claim that Ms. Chamberlin was an "unreliable" witness; and

e.     The notes compiled by Defendants Newbert, Galligan, et al.,

regarding their search of the Department of Motor Vehicles

database for information about "blue and white Pontiac Grand

Prix" vehicles in New York State.

159.    If the aforementioned evidence had been properly registered, stored,

preserved, maintained and controlled by Defendants Newbert, Galligan, Hartfield, Ryan,

Harris, Leho, O'Toole, Sheehan, McGuire, Haskins, Kiely, Trabitz, various NYPD

John/Jane Does, DA Merola, DA Johnson, ADA Freund, and various ADA John/Jane

Does, and had it been produced to Mr. Newton and his attorneys in a timely manner, Mr.

Newton would not have been convicted of the crime described above, or his incarceration

would have been terminated more than a decade ago.

160.    The aforesaid conduct operated, *inter alia*, to deprive Mr. Newton of

important and well established rights under the Fourth, Fifth, Sixth, Eighth and

Fourteenth Amendments to the United States Constitution, and rights established by the

Constitution of the State of New York, including Plaintiff's right not be significantly

detained pretrial except pursuant to a fair and reliable determination of probable cause,

his right to be free from a bad-faith prosecution, his right to a fair trial, his right to

freedom from the deprivation of liberty without due process of law, and his right to be

free from cruel and unusual punishment. Such misconduct also directly and proximately caused his arrest, his indictment, his conviction, his sentence and his incarceration for over twenty-two years.

161.    As a direct result of the deliberate (or reckless) failure to register, store, preserve, maintain and control material and critical evidence relating to the crime of which Alan Newton was charged and convicted, Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, Sheehan, McGuire, Haskins, Kiely, Trabitz, various NYPD John/Jane Does, DA Merola, DA Johnson, ADA Freund, and various ADA John/Jane Does, Mr. Newton endured a wrongful arrest and an unfair trial in violation of his clearly established constitutional rights; he was maliciously prosecuted; he was forced to endure a wrongful conviction, and then wrongfully imprisoned for over two decades.   During all of these events, Mr. Newton endured substantial physical, emotional and pecuniary injuries detailed above.

162.    Each of the aforementioned Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

163.    Thus, pursuant to 42 U.S.C. § 1983, Plaintiff Alan Newton now demands judgment against Defendants Newbert, Galligan, Hartfield, Ryan, Harris, Leho, O'Toole, Sheehan, McGuire, Haskins, Kiely, Trabitz, various NYPD John/Jane Does, DA Merola, DA Johnson, ADA Freund, and various ADA John/Jane Does, for compensatory damages totaling One Hundred Million Dollars ($100,000,000.00), plus attorney fees, costs, expenses, and any other and further relief this Court deems just and proper.