UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

ALAN NEWTON,

                                                   **DECLARATION**
                                Plaintiff,

          -against-                             07-CV-6211 (SAS)


THE CITY OF NEW YORK, et al.,

                                  Defendant(s).

------------------------------------------------------------------------ X

        ARTHUR G. LARKIN, for his declaration pursuant to 28 U.S.C. §1746, states:

        1.       I am a Senior Counsel at the New York City Law Department and I am admitted to practice before the bar of this Court. I am fully familiar with the matters discussed below, and I make this declaration in support of defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

        2.       The complaint was filed by ECF on or about July 3, 2007 (*see* DE 1), and defendants answered on Sept. 28, 2007, denying the material allegations and raising affirmative defenses (*see* DE 4). Plaintiff Alan Newton alleges that he was wrongfully convicted of the rape and assault of a woman identified by her initials, V.J. (in order to protect her privacy), on or about June 23, 1984, in the vicinity of Crotona Park in the Bronx. Plaintiff alleges that he was arrested, prosecuted, convicted of the crime, and imprisoned for twenty-one years (from 1985-2006) in violation of his constitutional rights.

        3.       Plaintiff's conviction was overturned on or about July 6, 2006, based on the results of DNA tests (*see* DE 1, ¶¶ 122-23). Plaintiff alleges that in August, 1994, he first requested DNA testing on a rape kit collected from the victim the night of the crime, but his

request was denied because the rape kit could not be found at that time. Plaintiff made several subsequent requests for the rape kit, but each time it was reported that the rape kit could not be located. (DE 1, ¶¶ 101-113) In or about 2005, the rape kit was located and submitted to the OCME for testing, which was completed in or about March, 2006. (*Id.*, ¶¶ 118-121) The District Attorney consented to vacate Mr. Newton's conviction based on the DNA test results.

4. The complaint relies extensively on the criminal proceedings and the full record of the matter *People v. Alan Newton*, Indictment # 2441/84 (Bronx County). The purpose of this declaration is to introduce as exhibits relevant portions of those criminal proceedings, and to set forth the facts concerning the case that were disclosed to the defense before trial.

5. Plaintiff's First Cause of Action alleges that the defendant-officers involved in the investigation of the rape of V.J. used suggestive identification procedures that violated plaintiff Alan Newton's constitutional rights. (Complaint, ¶¶ 126(a)-(l)). However, the facts concerning these allegations were known to the defense at the time of trial and were fully explored at the three-day Wade hearing that preceded the trial.

6. First, plaintiff alleges that defendants should have determined V.J.'s "competency . . . to identify her assailant" given the facts that V.J. was an epileptic on medication who was intoxicated the night the crime occurred, and that she mixed alcohol with her medications in contravention of her doctor's orders. (Complaint, ¶¶ 43-45, 126(a)) These facts were known to the defense: In his opening at trial, defense counsel emphasized that V.J. "is an epileptic . . . on medication [who] had been told by doctors . . . that she should not drink" when she takes her medication (Tr., at 325); and the victim testified at the Wade hearing and trial about her epilepsy medications, excessive drinking and failure to follow her doctor's instructions

the night of the crime.[1] (5/8 Wade Hearing Tr., at 186-92, 5/13 Tr., at 330-31, 350-51, 395-402)[2] V.J. admitted at trial that she was an "alcoholic." (5/13 Tr., at 331:18-19) Copies of the foregoing transcript excerpts are annexed as Exhibit A.

7. Second, plaintiff alleges that defendants failed to obtain "detailed" descriptions of the assailant from V.J. or the other eyewitness (Aurea Gonzalez, a store clerk who saw the assailant follow V.J. out of a bodega before the crime occurred), before showing them photographs of suspects or asking them to view lineups (*see* Complaint, ¶ 126(b)). The descriptions that the officers obtained as well as the timing of those descriptions was disclosed at the Wade hearing and reviewed by the trial judge (5/8 Tr., at 41-43 (description by V.J.), annexed as part of Exhibit B; 5/9 Tr., at 280:3-12 (description by Ms. Gonzalez), annexed as part of Exhibit C)

8. Third, plaintiff alleges that defendants showed the two eyewitnesses photo arrays in which plaintiff's photograph "was noticeably different from all other photographs" (Complaint, ¶ 126(c)). All photographs of Mr. Newton that were shown to V.J. and Ms. Gonzalez were disclosed to the defense, introduced as exhibits at the Wade hearing and reviewed by the trial judge. V.J. was not shown a "photo array," but rather, she was asked to look at photographs of suspects from the CATCH unit that fit the general description she gave, i.e., a male black. (5/7 Tr., at 6:13-17) The procedure was described at the Wade hearing and the photograph she picked out – that of Mr. Newton – was introduced as an exhibit. (*Id*. at 3-13, 40-57; 5/8 Tr., at 155-59, copies attached as Exhibit B) Ms. Gonzalez was shown a photo array that

---

[1] In or about 1987, V.J. died of causes unrelated to the rape and assault.

[2] All references are to page numbers from the Wade hearing and trial transcripts in *People v. Newton*, Indictment # 2441/84 (Bronx County). The pages are numbered sequentially, i.e., the Wade hearing (1-306) and trial (307-954). Only relevant excerpts are submitted with this declaration.

included Mr. Newton's photo. The procedure was described at the Wade hearing, and the photo array was introduced as an exhibit and reviewed by the trial judge. (5/9 Tr., at 269a-285, copies attached as Exhibit C).

9.    Fourth, plaintiff alleges that defendants showed the two eyewitnesses photographs of Mr. Newton prior to their viewing live lineups (Complaint, ¶ 126(d)). These facts were disclosed to the defense and made known to the trial judge (*see* ¶ 9, above; *see also* Exhibit B, Exhibit C).

10.   Fifth, plaintiff alleges that defendants pressured the eyewitnesses to identify Mr. Newton as the assailant despite statements that they "were not sure" (Complaint, ¶ 126(e)). This allegation is contradicted by the record and is not plausible. Detective Newbert testified at the Wade hearing that V.J. told her "she was sure" that the photograph of Mr. Newton was that of her assailant (5/7 Tr., at 13:25 & 55, copy attached as part of Exhibit B). V.J. also testified that when Detective Newbert asked her if she was sure that the photo was that of her assailant, she said, "Yes, I was." (5/8 Tr., at 159, copy attached as part of Exhibit B). After viewing the lineup and hearing the voice identification procedure, V.J. said, "I'm positive it is him." (5/8 Tr., at 166, copy attached as part of Exhibit K) Similarly, Detective Newbert testified that after Ms. Gonzalez selected Mr. Newton's photograph from the photo array, she asked the witness "if she were sure, and she said, 'Yes.'" (5/7 Tr., at 24, copy attached as Exhibit D) Ms. Gonzalez also testified that when she saw the photo array, she was "sure that it [i.e., number two] was the person that went to the store" the night of the crime. (5/9 Tr., at 281, copy attached as part of Exhibit C).

11.   Sixth, plaintiff alleges that the defendant officers informed the eyewitnesses of Mr. Newton's "identity, address and other identifying characteristics" before

4

obtaining a description, and before showing the witnesses photographs or a live lineup (Complaint, ¶ 126(f)). The record demonstrates otherwise. V.J. gave her first description of the assailant to defendant Leho, the first officer who responded to the scene on June 23, 1984 (Complaint, ¶ 53), several days before Mr. Newton was even a suspect. In addition, V.J. testified at the Wade hearing that before she looked at photographs, Detective Newbert only asked her to say if she saw the person who raped her (5/8 Tr., at 156, copy attached as part of Exhibit B), and that before she viewed the lineup, Detective Newbert told her "not to be afraid, and that if I see the person that assaulted me, don't be afraid, to tell them, to let them know." (Id., at 160-62, copy attached as Exhibit E) None of the testimony even remotely suggested that V.J. was told anything about Mr. Newton's "identity, address [or] other identifying characteristics" at any time.

    12. Similarly, Ms. Gonzalez testified at the Wade hearing that before she viewed the photo array, detectives only asked her to tell them if "someone [in the photo array] appeared like the person who came in" to the store the night of the crime (5/9 Tr., at 274, copy attached as Exhibit C), and that before she viewed the lineup, detectives told her that she could see the people in the lineup but "they were not going to see me," and that she should tell them "if I was sure of the person that I had selected of those that were there." (5/9 Tr., at 282, copy attached as part of Exhibit C). Ms. Gonzalez said nothing even remotely suggesting that detectives told her about Newton's address or other "identifying characteristics" before she gave a description, viewed the photo array or viewed the lineup.

    13. Seventh, plaintiff alleges that the eyewitnesses were informed that he would be one of the people in the live lineup (Complaint, ¶ 126(g)). V.J. expressly denied that she was ever told this fact (5/8 Tr., at 162, copy attached as part of Exhibit E), and Detective

5

Newbert expressly denied that she ever told V.J. this fact (5/7 Tr., at 74, copy attached as part of Exhibit E).  Detective Newbert denied ever telling Ms. Gonzalez that fact (5/7 Tr., at 113-114, copy attached as Exhibit F), and Ms. Gonzalez never said anything suggesting that detectives told her who was going to be in the live lineup (*see* Exhibit B).  Plaintiff's allegations to the contrary are not plausible.

14.     Eighth, plaintiff alleges that defendants told the eyewitnesses that plaintiff had been charged with another assault in the Bronx (Complaint, ¶ 126(h)).  The record demonstrates otherwise.  V.J. testified that no one ever told her that the CATCH unit photos were those of persons who had previously been arrested.  (5/8 Tr., at 214, copy attached as Exhibit G)  Detective Newbert testified that the photos shown to V.J. had the individuals' NYSSIS numbers on the front which the victim could see, and some of them "ha[d] actual arrest reports on the back" which the victim could not see.  (5/7 Tr., at 52:16-17, copy attached as part of Exhibit B)  V.J. did not look at the back of the photos (*id*. at 52-53), so she could not see any arrest information for Mr. Newton, assuming any was on the reverse side of the photo.  The photograph itself was introduced as an exhibit at the Wade hearing and reviewed by the trial judge.  No other testimony remotely suggests that defendants told V.J. or Ms. Gonzalez that Mr. Newton had been charged with other crimes.

15.     Ninth, plaintiff alleges that the voice identification procedure was "woefully inadequate" or otherwise improper (Complaint, ¶¶ 126(i)-(k)).  The voice identification procedure was the subject of lengthy testimony at the Wade hearing by defendants Newbert (16-22, 84-106, copy attached as Exhibit H), Galligan (126-151, copy attached as Exhibit I) and O'Toole (253-69, copy attached as Exhibit J); the complaining witness V.J. (163-72, 193-99, copy attached as Exhibit K); two of the fillers (216-31, copy attached as Exhibit L);

and Mr. Newton himself (237-51, copy attached as <u>Exhibit M</u>).  The facts alleged in connection with the inadequate or improper voice identification procedure were, therefore, fully disclosed during the <u>Wade</u> hearing and reviewed by the trial judge.  (*Compare* Complaint, ¶¶ 69-73, *with* <u>Exhibits H-M</u>)

        16.     <u>Tenth</u>, and finally, plaintiff alleges that defendants engaged in "post-identification suggestion" by telling the witnesses that they had picked out the right person and that the "other witnesses" also identified him.  (Complaint, ¶ 126(l))  Nothing in the detailed <u>Wade</u> hearing testimony supports this allegation; furthermore, Ms. Gonzalez was unable to identify Mr. Newton at the <u>Wade</u> hearing (<u>Exhibit B</u>, at 276:9-22), which casts serious doubt on the plausibility of this allegation.

        17.     After the <u>Wade</u> hearing, the trial judge issued a ruling from the bench that the identification of Mr. Newton both by V.J. and Ms. Gonzalez was not the product of undue suggestion and would be admitted at trial (Tr., at 624-29, copy annexed as <u>Exhibit N</u>).

        18.     Plaintiff's Second Cause of Action asserts claims based on False Arrest, False Imprisonment and Malicious Prosecution.  Plaintiff was arrested on June 28, 1984. Annexed as <u>Exhibit O</u> is a copy of plaintiff's arrest report, which reflects the date of his arrest.

        19.     He was subsequently indicted by the Grand Jury on or about July 2, 1984. A copy of the indictment is annexed as <u>Exhibit P</u>.

        20.     In support of his malicious prosecution claim, plaintiff alleges, among other things, that V.J. initially identified someone named "Willie" as the assailant.  (Complaint, ¶ 58)  This fact was disclosed to the defense and V.J. was cross-examined at trial about her initial statement concerning "Willie."  (Tr., 434-35, copy attached as <u>Exhibit Q</u>)

21. Plaintiff also alleges that the defendant officers interviewed a witness named "Ms. Chamberlin," who told them that someone named "Willie" lived in the abandoned building where V.J. was raped and assaulted, and that he drove the same type of car that V.J. described her assailant as driving, i.e., a blue and white Pontiac Grand Prix. (Complaint, ¶¶ 58-60) Plaintiff alleges that defendants "dismissed the information offered by Ms. Chamberlin and failed to reveal [her] true identity . . . and her potentially exculpatory information" to Mr. Newton. (Complaint, ¶¶ 134(c) & (d), 137)

22. At trial, however, defendants Newbert and Galligan testified about their conversation with this witness, i.e., that she identified herself as "Deborah Chambrin" or "Chamberlin" and was interviewed on the afternoon of June 23, 1984; that she told them someone named "Willie" lived in the abandoned building where the attack on V.J. took place; and that he drove a blue and white Pontiac. Defendants also testified that they found the witness in the vicinity of the park where the attack occurred; that she gave them the address 1783 Marmian Avenue, Apt. 18; that she had five to seven aliases and a criminal record; and that the officers attempted to find her the next day at the address she provided but the address did not exist. (Tr., at 602-615, 654-58, 662-89, copy attached as Exhibit R)

23. In support of his malicious prosecution claim, plaintiff also alleges that defendants did not disclose the results of a "sneaker tread print comparison" allegedly conducted on Mr. Newton's sneakers, in order to determine if the treads matched those that appeared on the victim's clothing. (Complaint, ¶¶ 91, 134(b), 136) However, while Mr. Newton's sneakers were taken and vouchered, no tests were ever performed on them notwithstanding a request by the lead detective, Newbert, that blood tests be conducted. (5/14/85 Tr., at 598-99, copy attached as

8

Exhibit S) Plaintiff affirmatively alleges that no "tread print comparison" was ever done. (Complaint, ¶ 148(g))

24. Plaintiff's Third Cause of Action is based, among other things, on V.J.'s allegedly "evolving" description of her assailant. The facts regarding her description were fully disclosed (*see, e.g.*, Tr., at 580-81, copy annexed as Exhibit T).

25. Plaintiff also alleges that defendants never disclosed the criminal background check concerning Deborah "Chambrin" or "Chamberlin," but the record demonstrates that the background check was disclosed prior to trial, and that Mr. Newton's defense attorney accepted the BCI check without the witness' name or address which had been whited out. (Tr., at 619-22, copy attached as Exhibit U)

26. By e-mail transmission yesterday, plaintiff's counsel agreed to withdraw plaintiff's false arrest claim.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York, on May 23, 2008.

                                                  /s/
                                    ARTHUR G. LARKIN (AL 9059)