# EXHIBIT M

Newton - Defense - Direct                        237

1

2      A    No.   I wasn't looking.   I had my back turned

3  to the door.

4      Q    And did there come a time when you were taken

5  from the squadroom to somewhere else?

6      A    Taken into the lineup for a second time.

7      Q    What happened when you got in there a second

8  time?

9      A    This time I was told I could choose a seat,

10  you know.   We was all standing up.   The fillers all

11  were in there standing up.   They told me I could

12  choose any seat I wanted this time.

13      Q    Did you choose a seat?

14      A    Yes.

15      Q    Which seat did you choose?

16      A    Number five.

17      Q    And after you choose that seat what happened?

18      A    Okay.   They had us take, put the numbers up

19  and they told us we was going to go for another lineup

20  now.   The window was opened up.   They just told us sit

21  there.

22      Q    Did you do that?

23      A    Yes.

24      Q    And did there come a time when something else

25  happened after that?

Newton - Defense - Direct                    238

1

2        A    Okay.    They told me by myself, the only one

3    to walk up to the glass and had mouth inspected. I        walked

4    up to the glass, open up my mouth.    Showed my teeth.

5    I was the only one.    I was told to sit back down then.

6    After that they called us all one at a time from one

7    to six to scream out I'm going to fix it for you so you

8    don't identify me you bitch.    We all screamed it out.

9    Then they told me by myself to scream it out again and

10   then after that they come after the lineup, they say

11   the lineup is over.

12       Detective Newbert, the lady, she said nobody was

13   picked out, pay the fillers.    They all can go home.

14   The filler left, walked out of the door.    I was escorted

15   to the door.    They opened the door and told me to scream

16   out the line again by myself.    After I screamed out the

17   line she told me well, I'll void the arrest, he was picked

18   out.    Let's do the paperwork to me to go wait in the

19   cell.    Went back to the cells.    To me they placed me

20   back under arrest.

21            THE COURT:    That was the first time you

22            were told you were placed under arrest?

23            THE WITNESS:    When I was at my home they

24            told me I was under arrest.    They read me my

25            rights.

Newton - Defense - Direct                    239

THE COURT:    In the stationhouse Newbert

kept telling you you had not been picked out?

THE WITNESS:    She never told me I was

picked out.

THE COURT:    Ever say you were not picked

out?

THE WITNESS:    When the lineup was over

she told all six of us, she said to me nobody

is picked out.    Let me pay the fillers, go

home.    Let me void the arrest.

THE COURT:    Void the arrest?

THE WITNESS:    Yes.

THE COURT:    She told you to scream it

out again?

THE WITNESS:    Yes.

THE COURT:    And you screamed it out again?

THE WITNESS:    By myself at the door.

THE COURT:    Then what happened?

THE WITNESS:    She told me to step -- because

first she told me after I screamed it out she

told me step back because she going to have

to do the paperwork.    Would I mind waiting

in the cells.    So I say, "Yep."    I went to

the cells.    That is when the sargent came told

Newton - Defense - Direct                              240

me you're back under arrest.

THE COURT:    If I understand you correctly
you say you screamed out alone twice, once
when you were sitting down and once by the
door?

THE WITNESS:  Yes.

THE COURT:    And a third time you screamed
it out in order with the other six?

THE WITNESS:  Yes.

THE COURT:    You say you were all screaming
out, you did it one at a time?

THE WITNESS:  Yes.

THE COURT:    Then they told you to scream
it out again?

THE WITNESS:  Yes.

THE COURT:    While you were sitting in
the lineup?

THE WITNESS:  Yes.

THE COURT:    And then they told you to
scream it out again at the door?

THE WITNESS:  Uh-huh.

Q    At what point did they tell you -- withdrawn.

THE COURT:    One point you were told to
go up alone to open up your mouth?

Newton - Defense - Direct                                  241

THE WITNESS:  Yes.

THE COURT:  Show your teeth?

THE WITNESS:  Yes.

Q    Was that before you screamed out anything?

A    Before anything was said.

Q    Was that before the window went down?

THE COURT:  The shade.

Q    The shade went up?

A    After the shade.

MS. FREUND:  Objection to form.

THE COURT:  Overruled.

A    It was after the shade went up that I went to the glass.

Q    How long after the shade went up?

A    Maybe about ten, fifteen minutes.

THE COURT:  Mr. Newton did anybody else in that second lineup walk up to the window?

THE WITNESS:  No, sir.  Nobody in the second lineup was walked up to the window but me.

THE COURT:  Even when they screamed out the line they were all seated?

THE WITNESS:  Even when they screamed out the line nobody walked up.  I was the

only one to walk up, told to show my teeth,
show my teeth.    Not one of them five fillers
was up in the lineup.

Q    When everybody was told to scream out?

A    We all sat down.

Q    Did any of you ever walk up to that window
and scream out anything?

A    No one of us walk up to the window and said
anything.

THE COURT:    Only time you walked up to
the window was to open your mouth, show you
teeth?

THE WITNESS:  Yes.

MR. SEGAL:  Nothing further.

CROSS EXAMINATION

BY MS. FREUND:

Q    Mr. Newton?

A    Yes.

Q    The first time that you screamed something
out that is while you were sitting down?

A    Yes.

Q    And that is while everybody was seated, sitting
down and number one screamed it out?

A    Yes.

Newton - Defense - Cross                                     243

Q    And then number two screamed it out?

A    Yes.

Q    Three, four, five, six and in sequence; am I correct?

A    Yes.

Q    And it was the same time you say that only you screamed it out and that was at the window?

A    Never at the window, at the chair.

THE COURT:  At the chair?

Q    You screamed it out from the chair the second time?

A    Yes.

Q    And the third time you say that you said it was at the door?

A    Yes.

Q    And you were alone at that time also?

A    I was alone in the room with officers.

THE COURT:  Was the door closed?

THE WITNESS:  The door was cracked a little bit cracked, the door.

THE COURT:  Could you see anybody in the other room?

THE WITNESS:  I couldn't see out.  They just cracked the door a little.

Newton - Defense - Cross                                    244

THE    COURT:    You don't know if anybody

could see you?

THE WITNESS:  No, sir.

Q   At the time, sir, that you called this out

while you were seated everybody was seated; am I correct?

A   Yes.

Q   And the second time, sir, when you called this

out the fillers were also seated?

A   Yes.

Q   And you were the one standing?

A   No, I didn't never stand.  I was sitting down.

Q   But all the other fillers were in that room?

A   Yes.

THE COURT:  Everybody was still seated?

Q   Everybody was still seated --

A   Yes --

Q   -- at that time?  And Detective -- do you know

any of the names of the detectives, Galligan who —

A   Newbert is the only name I knew.

THE    COURT:    There was a detective in the

lineup room with you?

THE  WITNESS:    That is the big guy that

testified.

THE COURT:  Galligan?

1        Newton - Defense - Cross                      245

2        THE WITNESS: Yes.

3        THE COURT: Police Officer O'Toole?

4        THE WITNESS: The short heavyset.

5        THE COURT: He was also in the room?

6        THE WITNESS: I don't recall since they

7    said he was in the room, I don't know if that

8    was him in there but it was two of them in

9    there.

10       THE COURT: Let me understand the sequence

11   again. Excuse me, Miss Freund.

12       MS. FREUND: Sure, Judge.

13       THE COURT: Shade went up. You just sat

14   there?

15       THE WITNESS: Yes.

16       THE COURT: Then all six of you are told

17   to scream out the line?

18       THE WITNESS: Okay, the shade went up

19   first.

20       THE COURT: The shade went up first?

21       THE WITNESS: About after ten, fifteen

22   minutes I walked up to the glass, had my mouth

23   inspected. Then we was told to scream out

24   the phrase.

25       THE COURT: That is what I wanted to understand

Newton - Defense - Cross                                    246

1  First the screen went up, six of you sat holding

2  the numbers?

3       THE WITNESS:  Yes.

4       THE COURT:    Then you were asked to go

5  to the window and show your teeth?

6       THE WITNESS:  Yes.

7       THE COURT:    Then you went back and sat

8  down all six of you were told to scream out

9  that one line?

10      THE WITNESS:  Yes.

11      THE COURT:    And you were told to scream

12 it out again while you were all still sitting?

13      THE WITNESS:  Yes.

14      THE COURT:    And the fillers were excused.

15 You were taken to the door which was opened

16 a crack and told to scream out once more?

17      THE WITNESS:  Exactly.

18 CROSS EXAMINATION CONTINUED

19 BY MS. FREUND:

20      Q   Mr. Newton, you don't know what happened --

21 withdrawn.

22      You have never -- you had never seen that day the

23 person that was viewing any of those lineups; did you?

24      A   No.

Newton - Defense - Cross                           247

1

2      Q    You were never in the viewing room, the

3  room that looks into the room where the lineup takes

4  place?

5      A    No.

6      Q    When you said these words, Mr. Newton, "I'll

7  fix you so you don't identify me, bitch" did you say

8  them quietly?

9      A    Said it in a regular tone.

10     Q    So you didn't want to say those words; did

11 you?

12     A    Said them in a regular tone.  They didn't tell

13 us how to say it, just repeat this.

14            THE COURT:    When they told you to say

15        it again did they tell you say it louder?

16            THE WITNESS:    Yes.  When they told me say

17        it the second time say it louder, more clear,

18        you know, but to my knowledge I said it loud

19        and clear the first time.

20            THE COURT:  I understand.

21     Q    And, sir, who told you that you could leave?

22     A    Detective Newbert.

23     Q    No other detective, Detective Galligan didn't

24 tell you that you could leave?

25     A    No.

Newton - Defense - Cross                                            248

1

2          THE COURT: Nobody told you could leave?

3          THE WITNESS:  They said we all could leave

4     after I pay those guys and void your arrest.

5     I would be able to leave.

6          THE COURT:  Fine.    While we're voiding

7     your arrest wait in the cell?

8          THE WITNESS:  That is what she told me.

9          THE COURT:  Sounds a little weird.

10         THE WITNESS:  Doesn't sound weird.

11         THE COURT:    If you're going to void an

12    arrest why would they tell you to wait in the

13    cell?

14         THE WITNESS:  I don't know.

15    Q    Somebody came into the lineup room and said

16    okay you all can leave; is that correct?

17    A    Yes.

18         THE COURT:    Newbert said that?    Detective

19    Newbert?

20    A    Yes.

21    Q    And you believed that Detective Newbert was

22    referring to you also that you all could leave?

23    A    She said let me pay the fillers first and I'll

24    be able to void your arrest and you then will be able

25    to leave.   She was referring to me when she voided the

Newton - Defense - Cross                          249

arrest.

Q    Did police officer O'Toole speak to you while you were in the lineup room?

A    O'Toole, one officer said to me after I was picked out of the lineup I don't know if it was O'Toole or not, not too many people get picked out on a voice so don't worry about it.    You probably will be cleared in a little while.

Q    This was in the lineup also?

A    No, this was in the cells.

Q    Nobody told you to kick and scream in the cells; did they?

A    Excuse me?

Q    Nobody asked you to yell and scream while you were in the cells; did they?

A    No, I did that on my own.

THE COURT:    That was after you were told that you were going to be rearrested; is that correct?

THE WITNESS:    Yes.

THE COURT:    Who told you that?

THE WITNESS:    Sargent -- I don't know his name.

THE COURT:    None of the officers who testified

Newton - Defense - Cross
Newton - Defense - Redirect                    250

2          here?

3                    THE WITNESS:  None.

4     Q     And, Mr. Newton, you waited in the cells while the

5  detectives completed paperwork?

6     A     I had no choice.

7                    MS. FREUND:  No further questions, your Honor.

8                    THE COURT:  Any redirect?

9  REDIRECT EXAMINATION

10  BY MR. SEGAL:

11     Q     The first lineup that was had do you remember how

12  long it was before when the shade went up and it went down?

13     A     It took a while, maybe about twenty, twenty-five

14  minutes before I was picked out.

15     Q     You mean the shade went up?

16     A     Yes.

17     Q     And how long do you say it was before the shade came

18  down?

19     A     About twenty or twenty five minutes.

20     Q     And then what happened?

21     A     They told me to go back into the squadroom.

22     Q     And when was the first time they told you you were

23  under arrest?

24                    THE COURT:  He says in the apartment first.

25                    MR. SEGAL:  Nothing further.

Newton - Defense - Recross                                    251

1

2              THE COURT:  All right.  Mr. Newton you can

3    resume you seat at the table.  Any recross, sorry?

4              MS. FREUND:  One moment.

5              THE COURT:  One moment, Mr. Newton.

6    RECROSS EXAMINATION

7    BY MS. FREUND:

8         Q    Any detectives speak to you after the first lineup?

9    Detective Newbert say anything to you after the first lineup?

10        A    Nothing.

11        Q    Detective Galligan?

12        A    (Witness shakes head.)

13        Q    Any other officers?

14        A    Told me to go back in the squadroom have a seat.

15             THE COURT:  Were you in handcuffs at the time?

16             THE WITNESS:  No, I was not in handcuffs.

17             MS. FREUND:  No further questions.

18             THE COURT:  Mr. Newton you can resume your seat

19    at counsel table.

20             Subject to hearing from Miss Gonzalez any other

21    witnesses?

22             MR. SEGAL:  No other witnesses.

23             THE COURT:  People have any witnesses?

24             MS. FREUND:  No, your Honor.

25             THE COURT:  I will see counsel int he robing

# EXHIBIT N

Proceedings                                    624

panel.  Enjoy the rest of today and tomorrow.  See

you Thursday morning at 9:30.  Jury is excused.

(Whereupon, the jury panel is taken from the

courtroom and the following proceedings take place

in the absence of the jury panel.)

THE COURT:  I will dictate the decision on the

Wade motion.

Pursuant to CPL Section 710.60 Subdivision 6,

following constitutes the findings of the fact and

conclusions of law and reasons for its determination

denying defendant's motion to suppress prospective

in-court identification testimony.

An indictment has been filed against the

defendant accusing him, inter alia of rape in the

first degree, robbery in the first degree and

sodomy in the first degree.  Defendant has moved

for an order excluding the identification testimony

of V█████ J██████ and Aurea Gonzalez owing to

improperly made previous identifications of said

defendant by said witnesses.

A pre-trial Wade Hearing was held before me at

which Detective JoAnn Newbert, Detective Philip

Galligan, the complainant, ███████████ Oscar

Goldman, David Doe, Police Officer William Sean O'Too

Proceedings                                    625

Aurea Gonzalez, Taji Middleton and the defendant,
Alan Newton testified.

While there were some differences in the testi-
mony of the witnesses particularly with regard to
the lineup viewed by Miss ██████, based on the
credible evidence educed at said hearing the
following findings of fact and conclusion of law
are made:

Finding of fact

Between approximately four a.m. and 4:40 a.m.
on June 23, 1984, the complaining witness V████
J████ was raped, sodomized, robbed and assaulted
in Crotona Park and in an adjacent abandoned build-
ing.  The entire incident lasted about 40 minutes
and Miss ██████ was able to view the defendant for
at least two of those minutes.

On June 24, 1984 Miss ██████ viewed several
hundred photographs of male blacks at Jacobi Hospital.

She did not select picture of the perpetrator
that night but did select pictures of males with
similar characteristics.  One June 25, 1984, she was
shown several hundred more photographs and selected
a picture of the defendant as the perpetrator of the
crimes charged in the indictment.  On each of those

Proceedings                                    626

dates Miss ████████ was only told to look through

the pictures to see if she could see a picture of

the perpetrator.  One June 27, 1984, Miss Aurea

Gonzalez, a bodega employee, was shown an array of

six pictures and asked if she saw a picture of the

man who was in her store with Miss ████████ shortly

before the assault and she selected defendant's

picture.

One June 28, 1984, Detective Newbert and three

other officers went to the defendant's home.  They

were admitted to his apartment and they told him his

picture had been selected as a perpetrator and that

the  police wanted him to appear in a lineup.  The

defendant reluctantly went to the precinct after he

was permitted to call his attorney's office and

told if he did not come voluntarily he would be

taken forcibly.  Detective Newbert knew that the

defendant then had a pending case only about several

weeks old.

At one p.m., not having heard from defendant's

attorney, the defendant was placed in a lineup.  He

selected the number two position.  Miss Gonzalez

viewed that lineup, was told to identify anyone

there that she recognized as having been in the

Proceedings                                      627

store at about four a.m. on June 23, 1984 and she

picked the defendant.  At two p.m. Miss ████

viewed the same lineup, was also asked if she

recognized the perpetrator therein with the defen-

dant at this time choosing the number five position

and she selected the defendant as the one who had

assaulted her.

However, she asked the officer to have each

person in the lineup repeat a sentence she recalled

the perpetrator having said.  Each person repeated

the sentence from there seated lineup position.

Then repeated the sentence as each walked up to the

viewing window and when Miss ████ said she still

could not hear them all a third time from behind a

closed door Miss ████ then identified the defen-

dant again, this time by his voice.

The Court has viewed the photo array and the

pictures of the two lineups and finds that all

persons appearing therein are reasonably similar in

age and appearance.

CONCLUSION OF LAW

The defendant was taken into custody in his

apartment at approximately eleven a.m. on June 28,

1984.  Based on the photographic identification

Proceedings

628

previously made by Miss ████ and Miss Gonzalez

the police had probable cause to arrest him.

(Wade versus N.Y. 442 U.S. 200.)

The entry into his apartment was consentual

and was not an intrusion of the holding in Payton

versus N.Y. 445 U.S. 573. Nor was there any impro-

priety in holding a lineup two hours after the

defendant was taken into custody when his counsel

was notified and never called, asked to be present

or asked for a brief adjournment. (People versus

Hawkins 55 N.Y. 2d 474.)

The photographic lineup identification proce-

dures utilized herin were not unnecessarily sugges-

tive and conducive to a substantial likelihood of

an irreperable misidentification. The People have

established by clear and convincing evidence that

any in-court identification of the defendant by

Miss ████ and Miss Gonzalez will stem from an

independent, untainted source. Each had the oppor-

tunity to observe the alleged perpetrator several

minutes during the morning in question - Miss

Gonzalez in her bodega and Miss ████ in the

bodega, in the car driven by the perpetrator and in

the abandoned building during the assault.

Proceedings                                              629

In light of the foregoing the defendant's

motion to suppress is in all respects denied.

Defendant has an appropriate exception.  Court is

recessed until two p.m.  The trial is recessed

until 9:30 Thursday morning.

MR. SEGAL:  On Thursday Miss Freund said she

has three witnesses.

THE COURT:  I will ask you to proceed.

MR. SEGAL:  Do you want me to go at two o'clock?

THE COURT:  No.  How long are your witnesses,

to be?

MS. FREUND:  One witness is coming in two

o'clock.  One witness will be here in the morning.

THE COURT:  Who is coming in, the doctor?

MS. FREUND:  The doctor.

THE COURT:  I assume Mr. Segal will not object

to putting on a witness out of turn if it is only

one witness.  Doctor who will be the last prosecution

witness.  Who would you have in the morning?

MS. FREUND:  The serologist that would be the

People's case.

MR. SEGAL:  Can I ask that Detective Galligan

be made available and Hartfield and the other

detective, Officer O'Toole.

# EXHIBIT O

```
+-------------------------------------------------------------------------+
| NEW YORK CITY POLICE DEPT ARREST REPORT RUN DATE 10/04/07 RUN TIME 13:45:01|
+-------------------------------------------------------------------------+

+*************************************************************************+
| DEFENDANT INFORMATION                              ARREST ID: B84019658 |
| NAME:NEWTON      ALAN          SEX:M RACE:BLACK    DOB:08/01/61 AGE: 22  |
| AKA: _____ CITZ? YES POB:OTHER          PHONE:(212)538-2353   |
|                                                                         |
| ADDR: 1330   WEBSTER AVE BRONX #21K NY      RES PCT: 042                 |
| SKIN TONE: DARK    HGT: 5'08" WGT: 150 EYE COLOR: BROWN  HAIR COLOR:BROWN|
| SOC STATUS: SINGLE      SOC SEC #: 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  DEFT/VICT RELAT: NONE    |
| PHYSICAL COND: APPARENTLY NORMAL          TYPE DRUG USED: NONE           |
| OCCUPATIONAL AREA: NONE                                                  |
| LICENSE/PERMIT-TYPE(EXC DRIVER/OPR/REG): _____  NO: _____ |
| CALLS: NO:(212)538-2353 NAME: MAVIS      NO:_____  NAME: _____ |
| ORACLE# 17442932 NYSID# 4295468Q FAX# _____ ARR.PROC: A/O,PRIS.PRESENT,C|
+-------------------------------------------------------------------------+
```

```
+*************************************************************************+
| NARRATIVE: DEFT A/C IN THAT HE FORCED C/W TO ORALLY SODOMIZE            |
|            HIM, RAPED HER TWICE, BEATEN WITH HANDS & FEET,              |
|            SLASHED C/W FACE WITH RAZOR.                                  |
+*************************************************************************+
| CHARGES INFORMATION                                                     |
|               ATT  LAW   SEC SUB  CLS TYPE CTS      DESCRIPTION          |
| TOP CHARGE-->  Y | PL | 125.25 01 | F | A | 01 | MURDER 2               |
| TOTAL CHARGES  N | PL | 130.35 01 | F | B | 02 | RAPE 1                 |
| COUNT = 06     N | PL | 130.50 01 | F | B | 01 | CRM SEX ACT 1          |
|                N | PL | 160.05 00 | F | D | 01 | ROBBERY-3              |
|                N | PL | 265.02 01 | F | D | 01 | CRIM POS WEAP-3        |
+*************************************************************************+
| ARREST RELATED INFORMATION          | DAT? NO                           |
|                                                                         |
| TIME 11:00 DATE 06/28/84 CMD 042  **********************************    |
| WEAPON POSS/USED:CUTTING INSTRUMENT  ARREST LOC: CROTONA PK-861 CROTONA PK|
| NUM OF ASSOC:00                                                         |
| PROPERTY VOUCHERS:                                                      |
|        1 NO:B744483    CMD:048 VAL:N/A      TYP:FIREARMS/WEAPONS         |
|        2 NO:B744512    CMD:048 VAL:N/A      TYP:ALL OTHER               |
+-------------------------------------------------------------------------+
```

```
+*************************************************************************+
| COMPLAINANT/UF-61/VICTIM INFORMATION                                    |
| IS COMPL A CORP? NO   OR PSNY? NO   OR DISABLED? NO   TOTAL VICTIMS = 01 |
| COMPL NAME: _____              SEX: F RACE: BLACK          AGE: 25 |
| ADDR: 152 E. 150TH STREET BX, NY            TEL NUM: (___)___-____       |
| AIDED NO: 001620 AIDED CMD: 048 ACC NO: _____ ACC CMD: _____           |
| UF-61:  NO:004751 CMD:048 SECTOR:FF JURISDICTION: N.Y. POLICE DEPT       |
| TIME & DATE OF OCCURRENCE:    04:00  ON  06/23/84   METHOD: _____   |
| PREMISES:RESDNCE NOT APT-HALL ETC. LOCATION:CROTONA PK-861 CROTONA PK    |
+*************************************************************************+
| ARRESTING OFFICER INFORMATION                                           |
| NAME:NEWBERT     JOANNE   C RANK:DT3 TAX NUMBER: 867300   SHIELD:02604   |
| DEPT:NYPD CMD:BX SEX  CHART: DET DUTY CT      SQUAD: C    ASSN:INVST     |
|                                                                         |
| OFFICER:  INJURED? NO    ASSIGNED? NO    ON DUTY? YES  IN UNIFORM? NO    |
| USED FORCE? NO  TYPE:_____  REASON:_____   |
+-------------------------------------------------------------------------+
```

# EXHIBIT P

I N D I C T M E N T

S U P R E M E   C O U R T   O F   T H E   S T A T E   O F   N E W   Y O R K

C O U N T Y   O F   T H E   B R O N X

------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

AGAINST

J.    ALAN NEWTON - AFO
         DEFENDANT 4X023562

INDICTMENT NO.    2441
                  #3001/84

------------------------------------------------

COUNTS

    RAPE IN THE FIRST DEGREE
    ( 2 COUNTS)
    SODOMY IN THE FIRST DEGREE
    ASSAULT IN THE FIRST DEGREE
    ASSAULT IN THE FIRST DEGREE
    ASSAULT IN THE FIRST DEGREE
    ROBBERY IN THE FIRST DEGREE
    ROBBERY IN THE FIRST DEGREE
    CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE

JUL 1 1 1984

JULY  2, 1984

A TRUE BILL

FOREMAN

MARIO MEROLA
DISTRICT ATTORNEY

## FIRST COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF RAPE IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, BEING A MALE, ENGAGED IN SEXUAL INTERCOURSE WITH ████████████ A FEMALE BY MEANS OF FORCIBLE COMPULSION.

## SECOND COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF RAPE IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, BEING A MALE, ENGAGED IN SEXUAL INTERCOURSE WITH ████████████ A FEMALE BY MEANS OF FORCIBLE COMPULSION.

## THIRD COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF SODOMY IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, ENGAGED IN DEVIATE SEXUAL INTERCOURSE, TO WIT, CONTACT BETWEEN THE PENIS OF ALAN NEWTON TO THE MOUTH OF ████ ████ BY MEANS OF FORCIBLE COMPULSION.

FOURTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF ASSAULT IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, WITH INTENT TO CAUSE SERIOUS PHYSICAL INJURY TO ████████████, CAUSED SUCH INJURY TO ████████████ BY MEANS OF A DANGEROUS INSTRUMENT.

FIFTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF ASSAULT IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, WITH INTENT TO DISFIGURE ████████████ SERIOUSLY AND PERMANENTLY, AND TO DESTROY, AMPUTATE AND DISABLE PERMANENTLY A MEMBER AND ORGAN OF THE BODY OF ████████████ CAUSED SUCH INJURY TO ████████████

SIXTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF ASSAULT IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, IN THE COURSE OF AND IN FURTHERANCE OF THE COMMISSION OR ATTEMPTED COMMISSION OF A FELONY, AND IN IMMEDIATE FLIGHT THEREFROM, THE DEFENDANT CAUSED SERIOUS PHYSICAL INJURY TO ███████ WHO WAS NOT A PARTICIPANT IN THE CRIME.

SEVENTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF ROBBERY IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE COUNTY OF THE BRONX, FORCIBLY STOLE CERTAIN PROPERTY, TO WIT: A QUANTITY OF U.S. CURRENCY AND PERSONAL PROPERTY FROM ███████ AND IN THE COURSE OF THE COMMISSION OF THE CRIME AND IN IMMEDIATE FLIGHT THEREFROM, THE DEFENDANT CAUSED SERIOUS PHYSICAL INJURY TO ███████ WHO WAS NOT A PARTICIPANT IN THE CRIME.

EIGHTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS
INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF ROBBERY IN THE
FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE
COUNTY OF THE BRONX, FORCIBLY STOLE CERTAIN PROPERTY, TO WIT: A
QUANTITY OF U.S. CURRENCY AND PERSONAL PROPERTY FROM ███████
AND IN THE COURSE OF THE COMMISSION OF THE CRIME AND IN IMMEDIATE
FLIGHT THEREFROM, THE DEFENDANT USED AND THREATENED THE IMMEDIATE
USE OF A DANGEROUS INSTRUMENT TO WIT: A RAZOR/BOX CUTTER.

NINTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS
INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF CRIMINAL POSSESSION
OF A WEAPON IN THE FOURTH DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JUNE 23, 1984, IN THE
COUNTY OF THE BRONX, KNOWINGLY AND UNLAWFULLY POSSESSED A DANGEROUS
INSTRUMENT TO WIT: RAZOR/BOX CUTTER, WITH INTENT TO USE SAME UNLAWFULLY
AGAINST ANOTHER.

MARIO MEROLA
DISTRICT ATTORNEY

# EXHIBIT Q

2    Q    You don't know how long?

3    A    No.

4    Q    At any time while you were driving in the car did

5    he ever say to you a name, what his name was.?

6    A    I don't recall.

7    Q    Did you ever tell the police the man told you a name?

8    A    I don't recall.

9    Q    You don't recall?

10   A    No.

11   Q    Do you recall telling the police that the name of

12   the man in the car was Willie?

13   A    No I don't recall that.

14   Q    You don't recall that, at any time saying that?

15   A    No.

16   Q    Did you ever tell the police, Detective Newbert, did

17   you ever tell her that the man's name was Willie?

18   A    (No response.)

19   Q    Did you ever tell that to Detective Newbert?

20   A    As I said, I don't recall.

21   Q    Did you ever tell it to any police officer or detec-

22   tive during the investigation of this case that the man's name

23   was Willie?

24   A    I don't remember.

25   Q    You don't remember?

1

██████████ - People - Cross                               435

2          A    Because you know things, when something like that

3     happens you don't want to remember it.

4          Q    You don't remember; is that right?

5               THE COURT:  All right.  It is asked and answered.

6          Q    After you get up to where -- to the park; right?

7          A    Yes.

8          Q    What is the name of that park?

9          A    I don't know.  I know it is Crotona Park.  I know

10    it is a piece of Crotona Park.

11         Q    What happens when you get up there?.

12         A    He said, "the car stalled as we were going up the

13    hill."

14         Q    You were going up a hill?

15         A    Yes.

16         Q    It is a steep hill.

17              THE COURT:  Car stalled when he went outside

18    lifted the hood; right.

19              THE WITNESS:  Yes.

20              THE COURT:  And then he kicked the car.  Let's

21    go.

22              MR. SEGAL:  Thank you, Judge.

23         Q    Did you see the man's face at that time?

24         A    No because only for a second when he lift up the hood

25    to go under the hood.