# MEMO ENDORSED

## LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (212) 836-4796
Fax: (917) 322-2105
john@johnschutty.com

JUN 19 2008

June 18, 2008

Hon. Debra Freeman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/7/08

Re: *Alan Newton v. City of New York, et al.*
Index No. 07-CV-6211 (SAS) (DF)

Dear Magistrate Judge Freeman:

My office represents Plaintiff Alan Newton. At a conference before Your Honor on June 16, we were asked to research and brief two issues relating to requests for documents that were served by Plaintiff and objected to by The City of New York (hereinafter "The City").

**First Dispute:**

**REQUEST NO. 26:**
Any and all documents, compiled during the period January 1, 1984 and January 1, 2007, showing any request for proposal, proposal, estimate, study, report, etc., that suggests a change in the manner in which evidence in criminal cases was/is collected, registered and stored by the NYPD.

**OBJECTION & RESPONSE TO INTERROGATORY NO. 26:**
Defendants object to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, seeks information that is protected by the deliberative process privilege and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff has learned that The City/NYPD, over the last two decades, undertook studies and considered (several times) upgrading the 85-year old paper-based system that it employs to register and store criminal evidence. The studies and proposals considered by The City/NYPD were undertaken *before* Mr. Newton's claim began to accrue in 2006. [Some of this knowledge came into Plaintiff's possession after the above request was formulated.]

*Factual Background:* The millions of items of evidence that move through the NYPD's Pearson Place evidence warehouse are tracked entirely by an antiquated, paper-based registration system. Similar items of evidence are stored together within the warehouse. For each room or storage area, there are a series of floor-to-ceiling bookshelves filled with voucher books which contain the individual vouchers for the property stored nearby. The vouchers are stored chronologically within the books by year, county, and voucher or storage number. The books themselves are similar to notebooks, allowing vouchers to be removed or inserted at any time. No bar-codes or

Hon. Debra Freeman
June 19, 2008
Page 2

computers are used to locate property. A lost or misfiled voucher makes it virtually impossible to locate evidence within the warehouse.

*First Proposed Change to the Evidence Storage System.* We have learned that, in 1973, the NYPD's "French Connection Task Force" recommended that the NYPD's paper-based evidence registration system be replaced by a computerized-based tracking system. Approximately ten years later (in 1983 or 1984), the NYPD solicited bids to develop a system called "PICS" (a Property Inventory Control System). Unfortunately, funding for "PICS" apparently was withdrawn two years later.

*Second Proposed Change to the Evidence Storage System.* Between 1989 and 1999, The City spent millions of dollars in an attempt to develop an automated criminal evidence registration system. The NYPD apparently recognized, once again, that its paper-based system was deficient; computers and the bar coding of evidence was recommended to ensure that the evidence could be easily located and retrieved. The City/NYPD signed a multi-million dollar contract with CGI Systems, Inc. to create an Automated Management of Property System, known as "AMPS." Unfortunately, after three years of design and planning, an additional five years of work, and $7 million in funding, the project apparently was abandoned. In January 1998, Police Commissioner Howard Safir terminated the CGI Systems contract, apparently after receiving recommendations from an outside consultant, Mr. Gordon Wasserman. Some background on the failed AMPS project can be found within the archives of *The New York Daily News* at http://www.nydailynews.com/archives/news/1999/05/16/1999-05-16_another_cop_cyber_flop__7m_s.html.

Today, the NYPD continues to rely on an antiquated (85-year old) paper voucher system to manage the criminal evidence in its possession.

What does Plaintiff seek by the above document request? Among other things, Plaintiff seeks all of The City's documents relating to the "PICS" and "AMPS" projects ("any request for proposal, proposal, estimate, study, report, etc.,") including, but not limited to: (a) the French Connection Task Force report of 1973; (b) any internal (City/NYPD) or external (through consultants) memoranda or reports detailing deficiencies in the paper-based system evidence registration system; (c) any "requests for proposal" for a new evidence registration system; (d) the "PICS" and "AMPS" contracts (and related correspondence), and (e) any documents (studies, reports or correspondence) setting forth the reasons why The City/NYPD elected to cancel the "PICS" and "AMPS" projects (including, but not limited to, consultant Gordon Wasserman's report). Plaintiff will serve an additional request for production to The City today requesting these items to ensure that a formal, specific demand is on file for these items. We would, however, be grateful for a court ruling on the discoverability of these items as they are covered by the request above.

*Legal Argument:* "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Hon. Debra Freeman
June 19, 2008
Page 3

Here, The City apparently studied their paper-based evidence retention system on several occasions *before* Mr. Newton's claim arose (his claim began to accrue after his conviction was vacated in 2006); based on the results of the studies undertaken by The City/NYPD, The City determined that their existing evidence tracking system was inadequate and they requested bids to upgrade the system. The documents surrounding the "PICS" and "AMPS" projects most certainly contain evaluations on the both the strength and weaknesses present in The City's paper-based evidence retention system. These documents are certainly relevant and material as to: (1) what was known by The City about the deficiencies in their existing paper-based system, and (2) the "feasibility of precautionary [or new technology] measures" that might be employed to solve the system's deficiencies.

The City has claimed that "policy reforms adopted by a municipality constitute 'remedial measures' within the meaning of Rule 407 of the Federal Rules of Evidence, which are not admissible to establish to establish culpability on the part of the municipality in civil rights cases." Letter from Arthur G. Larkin to Magistrate Judge Debra Freeman dated June 16, 2008, at 4 (citations omitted). Interestingly, The City attempts to claim that "remedial measures," rather than "*subsequent* remedial measures," are covered by Rule 407 – this is a disingenuous suggestion.

Contrary to defendants' claims, Rule 407 has no applicability here for two reasons: (1) admissibility of the documents at trial is not yet at issue, and (2) even if admissibility was at issue, the documents do not fall within the scope of Rule 407 because the documents do not concern "*subsequent* remedial measures."

First, Rule 407 is a rule of admissibility at trial; it is not a rule governing pretrial discovery. 2 Weinstein, *Weinstein's Evidence* ¶ 407[07] at 407-44 (1996). The latter treatise states:

> The standard of admissibility established by Rule 407 for evidence of subsequent remedial measures is not the same as that for pretrial discovery. Some courts have failed to make the distinction and denied discovery on the grounds of relevancy. The better view is to permit discovery, not only because Rule 407 is essentially a rule of public policy rather than of relevancy, but also because subsequent remedial measures might be admissible to prove a consequential, material fact in issue other than negligence.

In short, even if Rule 407 *might* bar the admissibility of the requested documents at trial, Rule 407 may not be invoked to prevent the disclosure of relevant documents. See, e.g., Trzeciak v. Apple Computers, Inc., No. 94 Civ. 1251, 1995 WL 20329 at *2, *8 n.1 (S.D.N.Y. 1995) (adopting Judge Weinstein's view).

Second, Rule 407 would not apply here, by its own terms, even if admissibility was presently at stake. Rule 407 provides:

> *When, after an injury or harm allegedly caused by an event, measures are taken* that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning

or instruction. *This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.*

The documents sought by Plaintiff concern modernization programs that were considered by the Defendants *before* Plaintiff's claim even began to accrue – as a result, these were not measures taken "*after an injury or harm [were allegedly] caused by an event.*" *See, e.g., Everts v. Altec Industries, Inc.*, 159 Fed.Appx. 284, 2005 WL 3453781 (2d Cir. 2005) (plaintiff permitted to introduce evidence of pre-loss remedial matters). [Finally, and additionally, the evidence might be admissible: (a) to prove the "feasibility of precautionary [new technology] measures" or (b) for impeachment purposes (the documents may contain admissions about deficiencies in the existing paper-based system).]

In sum, the documents sought are not only discoverable under Fed. R. Civ. P. 26 (b)(1), they will likely be deemed admissible at trial. Accordingly, Plaintiff seeks a court order compelling their production

**Second Dispute:**

### REQUEST NO. 45:
Any and all documents that describe the duties and responsibilities of the NYPD "Police Laboratory" (or any technicians employed by the NYPD) to test biological crime evidence, and the discretion, if any, the Laboratory and its employees had in determining what tests to perform on criminal (biological) evidence between January 1, 1984 and January 1, 1986.

### OBJECTION & RESPONSE TO INTERROGATORY NO. 45:
Defendants object to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

*Factual Background*: In the Complaint, Plaintiff alleges that the Defendants: (a) wrongfully failed to test criminal (biological) evidence collected from both the victim of the rape and the criminal defendant, Mr. Newton, and/or (b) wrongfully secreted the results of such testing. *See, e.g.*, Complaint ¶¶ 90, 148 (f-g), 149 (c-d), 166 (f-g), 169-170.

In their recently filed Rule 12(c) motion, the Defendants claim that they (the NYPD and the NYPD Crime Lab) had no constitutional duty to test biological evidence collected in the criminal case. In objecting to this request, the Defendants have merely claimed that "[t]here is no constitutional claim for defendants' alleged failure to test evidence."

Plaintiff does not contest the latter legal claim by defense counsel – if Plaintiff merely alleged that the Defendants "failed to test" without any duty to test that was assumed voluntarily. What the Defendants fail to recognize here is that Plaintiff is entitled to know what "duty to test" the NYPD and its Crime Lab may have voluntarily assumed in its Crime Lab manuals and protocols and, further, whether the NYPD and its Crime Lab deviated from its established procedures in investigating the crimes allegedly perpetrated by Mr. Newton. Specifically, what discretion did

Hon. Debra Freeman
June 19, 2008
Page 5

NYPD Crime Lab employees have when physical evidence was delivered to the Crime Lab under NYPD manuals and/or regulations – did they have the discretion not to perform tests, and/or did they have the discretion not to complete a report when a test was performed?

Plaintiff has already been told that certain *minimal* biological tests were performed on some items of evidence (the rape kit and the victim's clothing), but certain other items of evidence collected from Plaintiff (his sneakers) were not tested at all (despite the fact that Mr. Newton was told that blood tests and a tread study would be performed on his sneakers when the sneakers were taken from him). What were the NYPD Crime Lab regulations/rules/protocols/standard operating procedures regarding testing and reports?

*Legal Argument:* The City's objection here is without merit. It is simply not credible for The City/NYPD to claim that no document exists which describes the duties and responsibilities of the NYPD "Police Laboratory" (or any technicians employed by the NYPD) to test biological crime evidence delivered to the Lab. Is The City implicitly admitting that the NYPD Crime Lab operated without any written guidelines for the handling and testing of biological crime evidence?

The City has claimed: "The documents sought are irrelevant and non-discoverable, to the extent that they may exist." Letter from Arthur G. Larkin to Plaintiff's Counsel dated April 17, 2008. The documents are certainly relevant and discoverable under Fed. R. Civ. P. 26(b)(1). The City should be ordered to respond to the request without objection, advise whether any documents exist that are responsive to the request and, if so, produce the documents.

Defense counsel's opposition to this letter-brief is due on Tuesday, June 24, and Plaintiff's reply letter-brief is due on Wednesday, June 25.

Respectfully submitted,

John F. Schutty
(JS-2173)

cc: Arthur G. Larkin, Esq. [Via Fax]

SO ORDERED: DATE: 7/7/08

DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE

The court having reviewed the within letter, as well as defendants' response dated June 24, 2008 and plaintiff's replies dated June 25 and July 3, 2008, it is hereby ordered as follows:

(1) Defendants are directed to respond to plaintiff's document request No. 26 within the time dictated by the Federal Rules. If defendants claim that any document is protected from disclosure based on the deliberative process privilege, such document shall be duly listed on a privilege log, and described with enough specificity to enable plaintiff to raise a challenge to the claim of privilege.

(2) Defendants are also directed to respond to plaintiff's document request No. 45, as the documents requested are plainly related to plaintiff's claims in this action (see, e.g., plaintiff's third cause of action, at ¶¶ 148(f), (g)) and are thus discoverable pursuant to Fed. R. Civ. P. 26(b)(1). While defendants assert that any claim based on an alleged failure to test evidence cannot be sustained, this is properly a challenge to the merits of plaintiff's claim, not to the discoverability of the requested documents.