USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

ALAN NEWTON,

        Plaintiff,

     - against -

THE CITY OF NEW YORK; DISTRICT ATTORNEYS
MARIO MEROLA AND ROBERT T. JOHNSON,
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES; ANDREA FREUND AND VARIOUS
JOHN/JANE DOES, INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES AS EMPLOYEES OF THE CITY
OF NEW YORK WHO ARE/WERE ASSISTANT
DISTRICT ATTORNEYS WITHIN THE OFFICE OF THE
DISTRICT ATTORNEY, COUNTY OF BRONX;
DETECTIVE JOANNE NEWBERT, DETECTIVE PHILLIP
GALLIGAN, DETECTIVE [JOHN DOE] HARTFIELD,
DETECTIVE [JOHN DOE] RYAN, DETECTIVE [JOHN
DOE] HARRIS, POLICE OFFICER DOUGLAS LEHO,
POLICE OFFICER WILLIAM SEAN O'TOOLE,
LIEUTENANT MICHAEL SHEEHAN, SERGEANT
PATRICK J. McGUIRE, POLICE OFFICER [JOHN DOE]
HASKINS, POLICE OFFICER [JANE DOE] KIELY,
INSPECTOR JACK J. TRABITZ AND VARIOUS
JOHN/JANE DOES, INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES AS EMPLOYEES OF THE CITY
OF NEW YORK WHO ARE/WERE MEMBERS OF THE
POLICE DEPARTMENT OF THE CITY OF NEW YORK,

        Defendants.

------------------------------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

<u>OPINION</u>
<u>AND</u>
<u>ORDER</u>

07 Civ. 6211
(SAS)

1

On September 15, 2010, plaintiff submitted a letter requesting leave to file a motion for reconsideration of this Court's September 14, 2010 Opinion and Order ("9/14/10 Opinion"). The 9/14/10 Opinion granted defendants' motion to dismiss all of the reinstated claims against defendant Patricia Ryan ("Ryan") and against the City for Ryan's alleged misconduct on immunity grounds.[1] Motions for reconsideration are governed by Local Civil Rule 6.3 and are committed to the sound discretion of the district court.[2] A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[3] A motion for reconsideration may also be granted to "'correct a clear error or prevent manifest injustice.'"[4]

---

[1]        *See* 9/15/10 Letter of John F. Schutty, plaintiff's counsel ("Pl. Ltr."); *Newton v. City of New York*, No. 07 Civ. 6211, 2010 WL 3584012, at * 1 (S.D.N.Y. Sept. 14, 2010).

[2]        *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[3]        *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

[4]        *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v.*

The limitations imposed by Local Civil Rule 6.3 are intended to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[5] Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[6] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[7] A motion for reconsideration is not an "opportunity for making new arguments that could have

---

*National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[5]    *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)). *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[6]    *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

[7]    *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

3

been previously advanced,"[8] nor is it a substitute for appeal.[9]

Plaintiff perceives three deficiencies in the 9/14/10 Opinion. *First*, plaintiff argues that leave for reconsideration should be granted because "the parties never had any opportunity to brief the common-law doctrine of absolute prosecutorial immunity."[10] Plaintiff contends that the doctrine of quasi-judicial immunity was only briefed in the context of New York *state* law, not under the federal common law upon which it was ultimately granted.[11] However, defendants' reply brief — to which plaintiff was permitted to reply for the specific purpose of addressing the immunity arguments raised — explicitly discusses and

---

[8]     *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[9]     *See Grand Crossing*, 2008 WL 4525400, at *3.

[10]     Pl. Ltr. at 1.

[11]     The fact that defendants raised their federal immunity arguments in their reply brief is not relevant for purposes of plaintiff's request for reconsideration, and plaintiff does not argue to the contrary. On the one hand, "as a general rule all meritorious arguments should be considered in ruling on a case." *Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n. 7 (S.D.N.Y. 1997). On the other hand, the rationale of fair play which permits courts to disregard arguments first raised in reply papers is not implicated here. Plaintiff specifically requested and was granted permission to submit a sur-reply to any novel issues presented in defendants' reply brief. *See* Docket Entry No. 183. Both sides thus had an opportunity to be heard, and as plaintiff points out in his 8/24/10 Letter to the Court, courts have broad discretion to consider arguments in a sur-reply. *See also Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005).

4

advocates for absolute immunity based on federal common law.  To underscore the

point, the relevant section is aptly titled "Quasi-Judicial Immunity – Federal

Law."[12]

The substantive arguments raised by defendants in their reply brief

contradict plaintiff's assertion that the federal immunity issue was "never raised by

the parties," thus depriving Newton of "any opportunity to brief this question."[13]

For example, the last sentence of the section reads, "Applying the 'functional'

approach used by the federal courts, we submit that the same result is warranted

under federal law: Patricia Ryan is entitled to absolute immunity here."[14]

Consequently, plaintiff's claim that he "had no notice that *Imbler*'s functional test

---

[12]    Defendants' Reply Memorandum in Support of Their Motions in Limine ("Def. Rep."), at 7-8.

[13]    Pl. Ltr. at 2.

[14]    Def. Rep. at 8.  Plaintiff argues that because "defendants never invoked *Imbler [v. Pachtman]* immunity, a doctrine of federal common law, the issue was not briefed by either side." Pl. Ltr. at 2.  But while *Imbler* was a seminal Supreme Court decision, federal immunity doctrines are not contained within or limited to one decision.  While defendants did not specifically cite *Imbler*, they cited a subsequent Supreme Court decision that adopted *Imbler*'s immunity rationale and specifically laid out the federal framework for absolute immunity. *See* Def. Rep. at 8 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985), to note that "courts adopt a 'functional approach' to determining immunity, by considering 'the nature of the responsibilities of the individual official . . . .').  Indeed, *Imbler* is one of many Supreme Court decisions supporting the proposition that government officials engaged in discretionary activities are entitled to absolute immunity if their challenged conduct was integral to an advocacy function.

was ever on the table" is baseless,[15] as is his claim that "it was error for the Court

to enter judgment on an issue never raised by the parties."[16]

      *Second*, plaintiff posits that "on the merits, Ryan's forensic testing and

misreporting is an act of investigation, not advocacy, so *Imbler* immunity does not

apply."[17]  In support of this argument, plaintiff cites patently inapposite cases.  As

noted in the 9/14/10 Opinion, whether an individual is entitled to absolute

immunity is based on a case by case inquiry of the specific function she was

engaging in at the time of the challenged conduct, not her official position or title.

      That some forensic examiners have not been granted immunity has no

bearing on Ryan – the importance of any immunity holding cannot be considered

apart from the context in which the actor in question was acting.  Thus, the two out-

of-Circuit cases cited by plaintiff are easily distinguished.  Neither case addresses

the role of forensic examiners in a post-conviction setting.  Instead, both involve

*pre-trial investigative activities in preparation for prosecution* — circumstances

that the 9/14/10 Opinion specifically noted  may not be appropriate for absolute

---

[15]     Pl. Ltr. at 3 n.5.

[16]     *Id.* at 3.

[17]     *Id.* at 1.

immunity.[18]

      *Third*, plaintiff argues that "forensic scientists have no qualified immunity for misrepresenting the evidence, because false reporting by any official, at any stage of the proceedings, violates clearly established constitutional law."[19] In support of his claim that the "constitutional bar on falsifying evidence is unequivocal and longstanding," plaintiff cites to three cases.[20]  However, none of these cases involves the mishandling of evidence in a post-conviction context — instead, they concern due process violations that arise from injuries to a defendant's pre-conviction liberty interest.[21]  Because post-conviction defendants

---

[18]    *See Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ("Under the Supreme Court's functional test, the *pre-trial investigatory* acts by forensic examiners merit no more protection under absolute immunity than do other persons performing investigatory actions.") (emphasis added); *Keko v. Hingle*, 318 F.3d 639, 644 (5th Cir. 2003) ("[T]o the extent Dr. West's *pre-testimonial* activities were investigative, his immunity ought to correlate with the merely qualified immunity granted to the police for comparable activities.") (emphasis added).

[19]    Pl. Ltr. at 1.

[20]    *Id*. at 4.

[21]    *See Miller v. Pate*, 386 U.S. 1, 3-4 (1967) (holding that "the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence" where prosecutor deliberately misrepresented paint splatter on defendant's shorts as blood in order to secure a conviction); *Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) ("A criminal defendant's due process rights are violated when the government obtains a conviction with testimony that government agents know is false."); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir.

do not enjoy the same due process protections, and New York state did not

establish a right to access post-conviction evidence until six years after Ryan's

alleged misconduct, Newton does not cast doubt on the qualified immunity

analysis set forth in the 9/14/10 Opinion.

Accordingly, plaintiff does meet the standard for reconsideration, and

his request for leave to file a motion for reconsideration is denied.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        September 20, 2010
              New York, New York


---

2004) (finding a due process violation where a forensic scientist's deliberate or
reckless falsification of evidence provided a basis for the charges against the
defendant and influenced the District Attorney's decision to proceed to trial).  In
contrast, Ryan only entered the scene after Newton's conviction, and her errors did
not contribute to the jury's determination that he was guilty — indeed, Newton's
conviction was based solely on eye witness testimony and V.J.'s testimony. *See*
Compl. ¶ 88.

8

## - Appearances -

**For Plaintiff:**

John Francis Schutty III, Esq.
Law Office of John F. Schutty
445 Park Avenue, 9th Floor
New York, New York 10022
(212) 836-4796

**For Defendants:**

Arthur Gabriel Larkin III
Fred Michael Weiler
Assistant Corporation Counsel
The New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-1599