UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALAN NEWTON,

                    Plaintiff,

      - against -

THE CITY OF NEW YORK; SERGEANT
PATRICK J. McGUIRE, POLICE OFFICER
STACY HASKINS, GERALDINE KIELY, AND
INSPECTOR JACK J. TRABITZ,
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES AS EMPLOYEES OF THE
CITY OF NEW YORK,

                    Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

07 Civ. 6211



SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION[1]

       Plaintiff Alan Newton was incarcerated for more than twenty-two years for a rape and assault that DNA testing ultimately proved he did not commit. Between 1994 and 2002, pursuant to subdivision 1-a to New York Criminal

---

[1] I do not include an overview of the facts of the case, because they have been amply set forth in many of my previous Opinions in this case. *See, e.g.*, *Newton v. City of New York*, — F. Supp. 2d —, No. 07 Civ. 6211, 2010 WL 3584012 (S.D.N.Y. Sept. 14, 2010); *Newton v. City of New York*, 681 F. Supp. 2d 473 (S.D.N.Y. 2010). All the facts referenced here are drawn from these decisions or from the trial record, and are not in dispute.

1

Procedure Law section 440.30 ("Section 440.30"), Newton thrice sought and was granted permission to test the rape kit containing critical biological evidence. In each instance, the City of New York ("the City") was unable to locate the rape kit. When the rape kit was finally found in 2005, subsequent DNA testing established that Newton was not the source of the sperm collected from the victim. Newton's conviction was vacated by the New York Supreme Court and he was released from prison in 2006.

Newton has sued the City of New York in this Court alleging a federal civil rights claim and pendant state law claims for the City's failure to produce the rape kit when requested. Among others, plaintiff asserts a general negligence claim, alleging that the City of New York had assumed an affirmative duty to provide him with the rape kit and that he justifiably relied upon that promise to his detriment, in the form of his continued incarceration.

At the close of plaintiff's proof on the liability phase of the trial, the parties cross-moved for a judgment of liability on the negligence claim, as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure.[2] Because I found that there was no question of fact, I decided the cross-motions, finding in favor of the defendants for the reasons set forth below. Defendants' remaining

---

[2] *See* Trial Transcript ("Tr.") of Oct. 13, 2010.

Rule 50 motions were summarily denied in their entirety.[3] I now issue this written opinion to fully explain that decision.

## II. APPLICABLE LAW

### A. Motion for Judgment as a Matter of Law Under Rule 50

A court may render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[4] The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment.[5] Accordingly, in ruling on such a motion, the trial court is required to

> consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.[6]

---

[3] *See* Tr. of Oct.14, 2010.

[4] Fed. R. Civ. P. 50(a)(1).

[5] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quotation marks and citations omitted); *Kerman v. City of New York*, 374 F.3d 93, 118 (2d Cir. 2004).

[6] *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quotation marks and citation omitted).

"Judgment as a matter of law is improper unless, properly viewed, the evidence points so strongly in favor of one party that a reasonable jury could reach but one conclusion, in favor of that party."[7]

### B. Negligence

"Municipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago, but other recognized limitations still govern the tort liability of municipal officers."[8] *First*, a municipality may be held liable for the negligence of its employees only if the acts at issue are ministerial, as opposed to discretionary.[9] "Discretionary . . . acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result."[10] Discretionary acts are immune from liability, even when the

---

[7] *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 (2d Cir. 1998) (quotation marks omitted).

[8] *Tango by Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983) (citation omitted).

[9] *See Lauer v. New York*, 95 N.Y.2d 95, 99 (2000). *Accord McLean v. City of New York*, 12 N.Y.3d 194, 202-03 (2009).

[10] *Tango*, 61 N.Y.2d at 41. *Accord Lapidus v. State*, 57 A.D.3d 83, 91-92 (2d Dept. 2008) (providing examples of ministerial duties, such as a Clerk's docketing of a judgment or a court officer's recording of a judicial order).

4

performance of such acts in a negligent fashion causes harm.[11] *Second*, municipal liability for the negligent exercise of a ministerial function requires the "existence of a special duty to the injured person, in contrast to a general duty owed to the public."[12] "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm."[13]

The requisite duty is established where "a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for those persons' benefit."[14]

> The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.[15]

"While the existence of a special relationship depends on the facts, a plaintiff has a

---

[11] *See Lauer*, 95 N.Y.2d at 99.

[12] *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 261 (1983).

[13] *Lauer*, 95 N.Y.2d at 100.

[14] *Garrett*, 58 N.Y.2d at 261.

[15] *Cuffy v. City of New York*, 69 N.Y.2d 255, 260 (1987).

heavy burden in establishing such a relationship."[16]

## III. DISCUSSION

### A. Special Relationship

Newton has failed — as a matter of law — to prove the elements of his negligence claim. He has shown neither (1) that the municipality voluntarily assumed a duty to act for his benefit, nor (2) that he justifiably relied on an affirmative undertaking by the municipality. Both of these elements are necessary to establish a special relationship between Newton and the City. Moreover, while Newton's case is factually novel, general public policy precedents counsel in favor of municipal immunity.[17]

---

[16] *Pelaez v. Seide*, 2 N.Y.3d 186, 199 n.8 (2004) (observing that most claims alleging a special relationship are dismissed as a matter of law).

[17] The case law on special relationships is concentrated in police protection cases, which frequently invoke questions about municipal obligations to extend protection or assistance to individuals. *See Kircher v. City of Jamestown*, 74 N.Y.2d 251, 255-56 (1989) ("The decisions of this court requiring the existence of a 'special relationship' between the claimant and the municipality before the latter may be held liable to the former for the negligent exercise of a government function such as providing police protection are legion."). The principles set forth in these cases may be extended to Newton's situation. The common thread in these cases is the attempt to hold the government secondarily liable for missing an opportunity to prevent harm to plaintiff, "even though it did not directly cause the plaintiff's injuries." *Pelaez*, 2 N.Y.3d at 205. While the City's actions were most unfortunate because they *extended* Newton's wrongful incarceration, they did not *cause* it. *See id.* (noting that courts have restricted cases involving a form of secondary liability out of respect for the public treasury).

### 1. Voluntary Assumption of Duty

"[T]he municipality's voluntary affirmative undertaking of a duty to act" is "critical in establishing the existence of a 'special relationship.'"[18] Newton asserts that the City voluntarily assumed a duty to act on his behalf when it initiated the search for the rape kit. Yet the City did so pursuant to its statutory duty. Section 440.30 states that the request of a post-conviction defendant for a forensic DNA test on specified evidence "shall" be granted upon a court's "determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant."[19] There can be no reasonable dispute that the analysis of sperm collected from a rape victim could have an impact on the adjudication of guilt. Newton has not demonstrated that the City "voluntarily agreed to do something *[it was] not already obligated by law to do* . . . . [T]he failure to perform a statutory duty, or the negligent performance of that duty, cannot be equated with the breach of a duty voluntarily assumed."[20] Because the defendants "did not go beyond the

---

[18]   *Cuffy*, 69 N.Y.2d at 261.

[19]   N.Y. Crim. Proc. L. § 440.30 (1-a)(a).

[20]   *Abraham v. New York*, 39 A.D.3d 21, 27 (2d Dept. 2007) (rejecting municipal liability on special relationship grounds for failure to adequately

mandates of the . . . law[]"[21] in their efforts to find the rape kit, they did not voluntarily assume an affirmative duty, and therefore formed no special relationship with Newton.

### 2. Justifiable Reliance

Even if the City's search for the rape kit constituted a voluntary undertaking of an affirmative duty, Newton did not, as a matter of law, *rely* on that undertaking. Newton argues that because he was incarcerated, he was necessarily dependent upon the City to locate his evidence in order to hasten his release from prison. Yet Newton's argument is deficient in two respects.

*First*, the reliance element requires a plaintiff to prove that a "municipality's voluntary undertaking has lulled [him] into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection" or aid.[22] Newton could not and did not act any differently as a result of the City's agreement to produce the rape kit. He had

---

investigate a tuberculosis outbreak in accord with statutory guidelines, where the record was devoid of evidentiary facts suggesting that the City undertook any obligation beyond what it was already required to do) (emphasis added).

[21]    *Pelaez*, 2 N.Y.3d at 202 (finding that City did not voluntarily assume a duty towards children exposed to lead paint when it inspected their premises and provided them certain health and counseling services in accordance with a statute).

[22]    *Id.*

8

exhausted all the appeals and collateral motions that he could exercise as a matter of right to challenge his conviction. The facts here do not "transform[] the municipality's failure to act from the mere withholding of a benefit into the affirmative infliction of an injury" necessary to establish reliance.[23]

Put differently, in failing to locate the rape kit and make it available for forensic DNA analysis, the City did not "positively or actively [work] an injury"[24] so much as fail to remedy an existing one. Mere hopefulness or genuine belief that municipal assistance is forthcoming is not sufficient to satisfy the reliance requirement.[25] Instead, the injured party must demonstrate "a reasonable expectation that help is on the way" *and* that he or she "acted on that expectation to his or her detriment such that he or she *was placed in a worse position than he or she would have been in had the assurance not been given.*"[26] Because Newton

---

[23] *Kircher*, 74 N.Y.2d at 259.

[24] *Id.* at 257 (quotation and citation omitted).

[25] *See, e.g., Berliner v. Thompson*, 166 A.D.2d 78, 82 (3d Dept. 1991) ("By reliance we do not mean that, in the ordinary sense, decedent was hopeful or that she genuinely believed that the police would apprehend her husband."). The *Berliner* court explained that "[t]he thread that runs through the cases analyzing this critical element" is the unfairness caused when municipal representations cause a party to forego other means of aid. *Id.*

[26] N.Y. Pattern Jury Instr. Civ. Div. 2 G 9 Intro 1 (citing cases discussing justifiable reliance under New York law) (citations omitted) (emphasis added).

would have remained incarcerated if the City had not agreed to search for the rape kit, he was not made worse off by the City's inability to produce the rape kit for testing.

*Second*, that the City agreed to search for the rape kit on Newton's behalf guaranteed neither that it would locate it, nor that the biological evidence would be testable if found. The assurance was thus not definite enough to generate justifiable reliance by Newton that he would be released from prison before his scheduled release date.[27] Indeed, Newton had reason to believe that the rape kit lacked extant biological evidence suitable for testing: in 1998, the Office of the Chief Medical Examiner found that the rape kit contained insufficient semen to proceed with serological analysis, the precursor to DNA testing. Hindsight may not be used to transform Newton's speculation that procuring the rape kit would lead to his early release from prison into the requisite "degree of certainty . . . [ that

---

[27] *See, e.g., Dinardo v. City of New York*, 13 N.Y.3d 872, 874 (2009). (holding that municipal defendants' "vaguely worded statements" that "something was being done" to have a violent student removed from a classroom were insufficient to "constitute an action that would lull a plaintiff into a false sense of security or otherwise generate justifiable reliance" in action by assaulted teacher). *See also McLean*, 12 N.Y.3d at 199 (noting how infrequently the government's failure to properly do its job results in liability because of the special relationship requirement).

his] injuries would have been prevented" if the City had located it earlier.[28]

Here, the City conducted a search to locate the evidence pursuant to its statutory obligation. That the City failed to find the rape kit until 2005 is not dispositive — to the extent that the City made any assurances to Newton, it fulfilled them. The governing statute mandates only that the City attempt to locate the evidence, not that it necessarily produce it.[29] There is thus no reasonable basis upon which to infer reliance.

### 3. Public Policy

The sympathetic nature of Newton's plight cannot obliterate the well-established requirement that an injured party demonstrate the existence of a

---

[28] *Kircher*, 74 N.Y.2d at 259 (finding no justifiable reliance where police officer's failure to respond to bystanders' report of kidnaping led to victim's repeated rape and assault, notwithstanding that the officer's assurance of assistance caused bystanders to abandon their efforts to aid the victim and that "plaintiff's failure to rely can be directly attributed to her dire circumstances"). *Id.* at 258.

[29] At the time Newton filed his motions to access the evidence, the statutory language provided only that "the court shall grant the application for forensic DNA testing" under specified circumstances. N.Y. Crim. Proc. L. § 440.30 (1-a)(b). Subsequent amendments have clarified that the actual production of evidence is not required, so long as the government can account for its absence or loss. *See infra* n. 35.

special relationship before liability may be imposed on a municipality.[30] "While . . . no rule should be so unyielding that it is mechanically applied without regard for its underlying purpose, a rule is simply not a rule if it can be summarily dismissed in order to achieve a desired result not in keeping with that purpose."[31] The special relationship requirement is grounded in judicial respect for the separation of powers, because any judicial expansion of the scope of government duties is effectively an order to the legislature to prioritize certain social services over others and to direct government funds accordingly. The recognition of a duty to provide post-conviction defendants with evidence brings with it corresponding municipal obligations that have to be supported by the municipal purse, but it is the legislative prerogative to determine the proper allocation of scarce municipal resources.[32] Courts cannot properly substitute their judgment for that of elected

---

[30] See, e.g., McLean, 12 N.Y.3d at 197 (recognizing shortcomings in conduct of municipal employees that could have prevented harm incurred by plaintiffs, but noting that "this is not the test" for municipal liability); Kircher, 74 N.Y. 2d at 257 (noting the sympathetic nature of the case, but defending and upholding the requirement of a special relationship based on policy considerations).

[31] Kircher, 74 N.Y.2d at 258.

[32] See, e.g., Pelaez, 2 N.Y.3d at 202 (declining to expand "the boundaries of special relationships under [New York] decision law" because "courts have been cautious about opening the public purse," leaving it to the

officials.

To the extent that the New York Legislature has commented, either directly or by implication, on the scope of municipal liability for negligence, it has not favored its extension to cover the facts presented here. In 2005, the Legislature amended Section 440.30 to expand the right to request post-conviction testing to all criminal defendants, regardless of the date of conviction, and to allow courts "to direct prosecutors to inform defendants of any information in the prosecutor's possession regarding the current location of the evidence to be tested, whether the evidence still exists, and the last-known physical location of the evidence."[33] In view of such targeted legislative efforts in the realm of post-conviction DNA testing, the "Legislature's failure to amend the statute and provide for a private cause of action [is] strong evidence of its [lack of] intent"[34] to impose municipal liability for the failure to produce evidence to post-conviction defendants. Indeed,

---

Legislature "to extend the orbit of duty"); *DeLong v. Erie*, 60 N.Y.2d 296, 304-05 (1983) (noting that in cases where the government may be faulted for the failure to prevent harm by third-party actors or forces, it has been "urged with some force that the proper allocation of public resources and available police services is a matter for the executive and legislative branches to decide").

[33] *People v. Pitts*, 4 N.Y.3d 303, 310 (2005).

[34] *Pelaez*, 2 N.Y.3d at 200-01.

the statute states:

> If there is a finding by the court that the specified evidence no longer exists or the physical location of such specified evidence is unknown, such information in and of itself shall not be a factor from which any inference unfavorable to the people may be drawn by the court in deciding a motion under this section.[35]

Moreover, permitting post-conviction defendants to recover from the City for its negligent failure to produce evidence may impede the efforts of such defendants to challenge their incarceration. The threat of "lawsuits . . . might impel governments to withdraw or reduce their protective services,"[36] and prompt the Legislature to reduce or restrain statutory protections for post-conviction defendants. In any event, because the "crushing burden [of liability] should not be

---

[35] N.Y. Crim. Proc. L. § 440.30 (1-a)(b). The Court of Appeals has affirmed that the statutory burden to provide evidence to post-conviction defendants is lifted where prosecutors provide adequate information to show whether evidence is available for testing, "such as an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating its existence or nonexistence," regardless of whether the evidence itself is produced. *Pitts*, 4 N.Y.3d at 311-312. *Accord People v. Garcia*, 65 A.D.3d 932, 932 (1st Dept. 2009) (holding that defendant was not entitled to DNA testing, "where detailed affidavits by detectives and the prosecutor, based on personal knowledge [and] setting forth their diligent but unsuccessful efforts to locate certain items recovered" from the crime scene, established that the "evidence on which forensic DNA testing was to be performed could no longer be located and was thus no longer available for testing").

[36] *McLean*, 12 N.Y.3d at 204.

14

imposed upon a governmental body in the absence of [statutory] language clearly designed to have that effect,[37] Newton's negligence claim must be dismissed.

### B. Discretionary Versus Ministerial Function

Apart from Newton's failure to prove a special relationship or justifiable reliance, he has failed to prove that the City's alleged negligence arose from a ministerial act. Newton's contention that the act of procuring the evidence was a ministerial function is belied by the very nature of his grievance against the City. Newton asserts that the City employed a poor or non-existent evidence management system that was widely disorganized and lacked adequate procedures for the retrieval of evidence. To support his claim, he presented evidence that the New York City Police Department's ("NYPD") Property Guide pertaining to the intake and invoicing of property in the NYPD's possession contains no written procedures for how evidence received in storage units was to be processed and recorded by the Property Clerk Division ("PCD"). Newton also submitted evidence that none of the Assistant District Attorneys tasked with retrieving the evidence in his case were familiar with, or had received any formal training or written materials on, the PCD's system of tracking evidence via invoice.

---

[37] *Id.*

Based on these undisputed facts, municipal employees did not have a "prescribe[d] course of action" to guide their search for evidence, but exercised "an element of judgment or choice" about how best to proceed.[38] The Court of Appeals has explained that "discretion is indicated if the powers are to be executed or withheld according to [the individual employee's] own view of what is necessary and proper."[39] In the absence of a written protocol or training, municipal employees had to use their independent judgment in searching for the rape kit. Because such discretionary conduct "may not result in the municipality's liability even when [it] is negligent,"[40] Newton's negligence claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, defendants' Rule 50 motion to dismiss plaintiff's negligence claim is granted, and plaintiff's cross-motion is denied.[41] All other Rule 50 motions, made at the close of plaintiff's case, are denied in their

---

[38] *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

[39] *Tango*, 61 N.Y.2d at 40 (quotation marks and citation omitted).

[40] *McLean*, 12 N.Y.3d at 202 (quotation marks and citation omitted).

[41] Because the negligence claim against the individual defendants would subject the City to liability through the doctrine of *respondeat superior*, thereby circumventing my holding that the City may not be liable upon these facts, the negligence claims against the individual defendants are also dismissed.

entirety.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         October 22, 2010

- **Appearances** -

**For Plaintiff:**

John Francis Schutty III, Esq.
Law Office of John F. Schutty
445 Park Avenue, 9th Floor
New York, New York 10022
(212) 836-4796

**For Defendants:**

Arthur Gabriel Larkin III
Meghan Cavalieri
Assistant Corporation Counsel
The New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-1599