UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

ALAN NEWTON,

                    Plaintiff,

        - against -

THE CITY OF NEW YORK; SERGEANT
PATRICK J. McGUIRE, POLICE OFFICER
STACY HASKINS, GERALDINE KIELY, AND
INSPECTOR JACK J. TRABITZ,
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES AS EMPLOYEES OF THE
CITY OF NEW YORK,

                    Defendants.

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/16

**OPINION AND
ORDER**[1]

**07 Civ. 6211 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

In 2007, Alan Newton sued the City of New York (the "City") and

certain of its employees (with the City, "defendants"), alleging a federal civil rights

claim and pendent state claims for defendants' failure to produce a rape kit that,

---

[1]        The Opinion and Order filed March 4, 2016 (the "March 4, 2016"
Opinion) is hereby withdrawn and replaced with this Amended Opinion and Order,
filed March 17, 2016. This Amended Opinion contains edits — which do not alter
any of the rulings herein — on the following pages: 2, 4, 9, and 34. This
Amended Opinion also requires Newton to consent to the remittitur within seven
days, or a new damages trial will be ordered.

-1-

when finally located in 2005, overturned his 1985 conviction for rape, robbery and assault.[2]  In bringing this action, Newton sought, *inter alia*, to impose liability under Section 1983 of Title 42 of the United States Code ("Section 1983")[3] and for intentional infliction of emotional distress ("IIED") under state law.

At trial, which began in September 2010, the jury returned a verdict in Newton's favor on both claims — awarding him eighteen million dollars on the Section 1983 claim and $592,500 on the IIED claim.  After trial, defendants moved to set aside both verdicts pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  Alternatively, defendants moved for a new trial or remittitur under Rules 59(a) and (e) of the Federal Rules of Civil Procedure, respectively.

On May 12, 2011, this Court granted defendants' Rule 50(b) motion in full, setting aside both verdicts and declining to reach the merits of defendants'

---

[2]     Newton spent approximately twenty-two years in prison, although part of this time was for an attempted rape conviction that was not overturned.

[3]     Newton's Section 1983 claim was brought under two provisions of the United States Constitution, the First Amendment and the Fourteenth Amendment's Due Process Clause.  At trial, the jury found defendants liable on the Section 1983 claim (and were asked to make separate First and Fourteenth Amendment findings in doing so).  *See* 10/18/10 Trial Transcript ("10/18/10 Trial Tr.") at 2387:3-13.  During the damages phase of trial, the jury awarded Newton one Section 1983 judgment in the amount of eighteen million dollars.  *See* 10/19/10 Trial Transcript ("10/19/10 Trial Tr.") at 2535:13-17.  Accordingly, this Opinion refers to the Section 1983 award as one verdict.

Rule 59 motions (the "May 12, 2011 Decision").[4]  Newton appealed only the setting aside of the Section 1983 verdict.  On February 26, 2015, the Second Circuit found for Newton and reinstated that award.[5]  The Second Circuit mandate issued on May 22, 2015 (the "Mandate"), remanding this case for further proceedings.

On remand, defendants now seek a ruling on their outstanding Rule 59 motions.  Newton objects, however, to this Court's authority to decide these motions at this stage — arguing that defendants have abandoned them and that the Mandate precludes their adjudication.[6]

For the following reasons, I find that this Court retains jurisdiction to decide defendants' pending Rule 59(a) and (e) motions.  The Rule 59(a) motion for a new trial is DENIED and the Rule 59(e) motion for remittitur is GRANTED.

## II.    BACKGROUND[7]

---

[4]        *See Newton v. City of New York*, 784 F. Supp. 2d 470, 473 n.5 (S.D.N.Y. 2011).

[5]        *See Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015).

[6]        The parties submitted letters in support of their respective positions. *See* Dkt. Nos. 230-235, 239-241.  Unless otherwise indicated, the docket numbers referenced in this Opinion correspond to filings on the district court docket.

[7]        This section outlines only the facts and procedural history that are relevant to this Opinion.  Additional background is provided in this Court's May 12, 2011 Decision.  *See Newton*, 784 F. Supp. 2d 470.

## A.     The V.J. and E.G. Convictions

In May 1985, Newton was convicted on charges relating to two separate sexual assault incidents.  The conviction at issue in this case — of which Newton was ultimately exonerated — was for rape, robbery, and assault (the "V.J. Conviction").  This conviction was based primarily on eyewitness testimony.  No DNA evidence was offered at trial, as the science of DNA testing was not yet adequately advanced.  On this conviction, Newton was sentenced to an indeterminate prison term of thirteen and one-third to forty years.

Also in May 1985, Newton was convicted of First Degree Attempted Rape, a Class C felony, and Endangering the Welfare of a Minor, a misdemeanor (the "E.G. Conviction").  The victim was a nine-year-old girl.  On this conviction, Newton was sentenced to an indeterminate prison term of three and one-third to ten years.  Newton was to serve the V.J. and E.G. sentences consecutively.

## B.     Exoneration from the V.J. Conviction

In 1994, approximately eleven years into Newton's incarceration, New York State enacted legislation allowing post-conviction defendants to request and obtain DNA testing under certain circumstances.[8]  Between 1994 and 2002, Newton thrice requested and received permission from a New York State court to

---

[8]     *See* N.Y. Crim. P. Law § 44.30(1-a).

conduct DNA testing on evidence from the V.J. crime scene.  In each instance, the City was unable to locate the rape kit containing the relevant biological evidence.

V.J.'s rape kit was finally located in 2005, and DNA testing excluded Newton as the source of the sperm collected from the victim.  Accordingly, in 2006, the New York Supreme Court vacated the V.J. Conviction and Newton was released from prison.  Despite Newton's efforts, the E.G. Conviction was not overturned.[9] By the time of his release, however, Newton had served the maximum ten-year sentence for that conviction.[10]

## C.    Trial

In 2007, Newton brought this action seeking recovery for his wrongful V.J. Conviction.  This case was tried by a jury in September 2010, with bifurcation of the Section 1983 claim's liability and damages phases.

### 1.    Evidentiary Rulings

---

[9]    In 1987, the New York Appellate Division affirmed the E.G. Conviction, and the New York Court of Appeals denied Newton's petition for leave to appeal.  *See People v. Newton*, 958 N.Y.S.2d 648, at *1 (N.Y. Sup. Ct. 2010).  Newton subsequently filed five *pro se* appeals and one *pro se* writ of habeas corpus, all of which were denied.  *Id.* at *3.  Thereafter, Newton moved in the New York Supreme Court for dismissal of the E.G. indictment on the basis, *inter alia*, of the state's failure to preserve the victim's sweater.  *See id.*  That motion was denied in 2010.  *See id.*

[10]    *See* "Inmate Information for Alan Newton," Ex. A to Plaintiff's Memorandum of Law in Support of Motion to Exclude Evidence of Plaintiff's Prior Conviction and Sentence, at 1-2 (Dkt. No. 168).

Among the pre-trial evidentiary rulings, this Court ruled on the admissibility of the E.G. Conviction (*i.e.*, the attempted rape conviction that was not overturned).  The Court admitted the following details about the E.G. Conviction: date of conviction, length of sentence, and that the conviction was for a Class C felony.  The Court excluded the nature of the E.G. Conviction (attempted rape) and the fact that the victim was a minor.  In accordance with these rulings, Newton stipulated at trial that he would have served the maximum ten-year sentence for the E.G. Conviction and thus, that he served twelve years for the V.J. Conviction.

### 2.    Liability Phase

At the close of the Section 1983 liability phase, defendants moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure.  This Court denied that motion, with the exception of granting defendants' motion to dismiss a negligence claim.

Newton's Section 1983 and IIED claims were submitted to the jury, who returned their liability verdicts on October 18, 2010.  The jury found the City liable on the Section 1983 claim and two of the four individual defendants liable on the IIED claim.

### 3.    Damages Phase

On the Section 1983 claim, Newton sought to recover only for his pain

and suffering during the twelve years of his wrongful incarceration.[11]  Newton

served as the only witness on the issue of damages.  On direct examination, Newton

testified, *inter alia*:

|  |  |
|---|---|
| Plaintiff's Counsel: | Can you describe those feelings of fear that you experienced during those last twelve years of incarceration? |
| Newton: | I was charged with a sexual assault in a penitentiary which is considered the lowest level.  You're considered the lowest prisoner in there.  You could have a prisoner that walks around with twenty-seven homicides and [is] a serial killer and you're still considered worse than him because of the nature of the offense. . . . [A]nd I['ve] seen a lot of people that had sexual assault crimes become a victim in there because of the nature of the offense.  And so you always had to — that was a consideration in the back of my mind and it was something that I had to live with every day.[12] |

Newton also testified that he "really never suffered [any] physical injuries" while

incarcerated and had not sought medical assistance for feelings of depression after

his release.[13]  He also explained that his conditions of confinement during his latter

---

[11]     *See* 10/18/10 Trial Tr. at 2396:19, 21-22 ("We are not seeking economic loss. . . . We are going for the 12 years of wrongful incarceration, pain and suffering.") (Plaintiff's Counsel John Schutty).

[12]     *Id.* at 2442:11-23.

[13]     *Id.* at 2445:11-12 (Plaintiff Alan Newton).  *Accord id.* at 2446:6 (Plaintiff Alan Newton).

-7-

twelve years of confinement (for the V.J. Conviction) — while difficult and marked by severe limitations on his freedom, comfort, and privacy — did not differ significantly from those during his first ten years (for the E.G. Conviction).[14]

After Newton's direct examination, defendants again sought permission to disclose the nature of the E.G. Conviction to the jury.  In support of this request, defendants argued that Newton's damages testimony had "opened the door to admission of the nature of [the E.G. Conviction], also a sexual offense."[15]  Adhering to its original ruling, the Court denied defendants' request because "[t]he prejudice [of admission] outweigh[ed] the probative value."[16]

During summations, Newton's attorney suggested to the jury that Newton be awarded two million dollars per year of wrongful incarceration. Thereafter, the Court instructed the jury that Newton's attorney was "allowed to suggest [that amount] but you are in no way bound to follow it."[17]

The jury reached its damages verdicts on October 19, 2010.  On the Section 1983 claim, the jury awarded a compensatory award of eighteen million

---

[14]    *See id.* at 2466-2475, 2497-2499.

[15]    2/12/16 Letter from Assistant Corporation Counsel ("ACC") Arthur Larkin to the Court at 2 (Dkt. No. 239).

[16]    10/19/10 Trial Tr. at 2493:20-21.

[17]    *Id.* at 2528:6-8.

dollars — which, allocated evenly across Newton's stipulated twelve years of wrongful incarceration, amounted to $1.5 million per year.[18]  On the IIED claim, the jury awarded $592,500.[19]

### D.    Defendants' Post-Trial Motions

After trial, in November 2010, defendants renewed their motion for judgment as a matter of law under Rule 50(b).  Defendants also moved, in the alternative, for a new trial or remittitur under Rules 59(a) and (e).  Defendants' Rule 50 and 59 motions were briefed together.

On May 12, 2011, this Court granted defendants' Rule 50(b) motion and set aside both the Section 1983 and IIED awards — holding, *inter alia*, that defendants' "delay in producing the DNA evidence resulted from the City's poor or non-existent evidence management system is indicative of negligence, but does not rise to the level of a constitutional violation."[20]  In so ruling, the May 12, 2011 Decision declined to reach the Rule 59 motions, explaining:  "alternatively, defendants move for a new trial or remittitur. . . . Because I grant defendants' Rule

---

[18]      *See* 1/22/16 Conference Transcript at 22:3-4 (Plaintiff's Counsel John Schutty).

[19]      The jury was not asked to, and did not, deliberate with respect to punitive damages.

[20]      *Newton*, 784 F. Supp. 2d at 480.

50(b) motion in its entirety, I do not consider these other claims."[21]  Neither party

moved for reconsideration of the May 12, 2011 Decision.

### E.     Newton's Appeal

On June 23, 2011, Newton filed a Notice of Appeal from the portion of

the May 12, 2011 Decision overturning the Section 1983 award.[22]  In his Opening

Brief, filed November 4, 2011, Newton appealed only the grant of defendants' Rule

50(b) motion and did not mention the undecided Rule 59 motions.[23]  Defendants'

Opposition Brief, filed on February 14, 2012, contained the following reference to

the Rule 59 motions:  "[a]lternatively, defendants moved for a new trial or remittitur

of the damages award."[24]  Newton's Reply Brief, filed March 14, 2012, again did not

mention the Rule 59 motions.[25]  This Court's May 12, 2011 Decision was included

in the appellate record at Dkt. No. 3.

Appellate argument was held on October 3, 2012.  On February 26,

2015, the Second Circuit issued an Opinion vacating this Court's May 12, 2011

---

[21]     *Id.* at 473 n.5.

[22]     As noted, Newton did not appeal the May 12, 2011 Decision with
respect to the IIED award.

[23]     *See* 11/4/11 Brief for Plaintiff-Appellant (2d Cir. Dkt. No. 56).

[24]     2/14/12 Opposition Brief for Defendants-Appellees at 6 (2d Cir. Dkt.
No. 120).

[25]     *See* 3/14/12 Reply Brief for Plaintiff-Appellant (2d Cir. Dkt. No. 123).

Decision (with instructions on remand),[26] and its Mandate issued on May 22, 2015.

The Mandate provided

> that the judgment of the district court is vacated and the case is
> remanded with instructions to reinstate the jury verdict with respect
> to the Appellant's Fourteenth Amendment claim and to reconsider
> Appellant's First Amendment claim in light of the opinion of this
> court.[27]

Neither the Second Circuit's Opinion nor Mandate mentioned the still-pending Rule

59 motions.[28]

### F.    Remand Proceedings

On remand, Newton seeks immediate entry of a final judgment on the

eighteen million dollar Section 1983 verdict.  Defendants, however, ask that this

Court first decide their outstanding Rule 59 motions.

## III.   APPLICABLE LAW

---

[26]    *See Newton*, 779 F.3d at 156 (holding, *inter alia*, that "a recklessness
or deliberate indifference analysis should have compelled the District Court to
uphold the 2010 jury verdict" on the Section 1983 claim); *id.* (observing that,
"[t]aken together, th[e] evidence supports a finding that the City, through the poor
administration of its evidence management system, perpetuated a practice or
custom that was wholly inadequate).

[27]    5/22/15 Judgment Mandate (Dkt. No. 193).

[28]    Additionally, defendants filed a petition for rehearing and rehearing
en banc, which was denied on May 11, 2015.  On January 11, 2016, the United
States Supreme Court also denied defendants' petition for a writ of certiorari.  *See
City of New York v. Newton*, No. 15-308, 2016 WL 100376 (Jan. 11, 2016).

## A.    Federal Rule of Civil Procedure 50(c)(1)

Pursuant to Rule 50(c)(1), when a district court grants a Rule 50 motion for judgment as a matter of law, it "must also conditionally rule on any motion for a new trial" and "state the grounds for conditionally granting or denying the motion for a new trial."[29]  Thus, in granting judgment as a matter of law, a trial court cannot decline to reach the merits of any motion for a new trial on the basis of mootness.[30]

## B.    The Mandate Rule

It is well-settled that "'[an appellate] mandate is controlling only as to matters within its compass. . . . Put simply, the law of the case does not extend to

---

[29]    Rule 50(c)(2) further provides:

> [c]onditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

[30]    *See Conte v. County of Nassau*, 596 Fed. App'x 1, 6 (2d Cir. 2014) ("Here, the district court denied the new trial motions as moot, but failed to conditionally rule on the parties' Rule 59 motions."); *Allam v. Myers*, 906 F. Supp. 2d 274, 284 (S.D.N.Y. 2012) ("Pursuant to Rule 50(c)(1), we are required to conditionally rule on the necessity of a new trial if our grant of JMOL . . . is later vacated or reversed by a higher court."); *Jennings v. Jones*, 499 F.3d 2, 21 (1st Cir. 2007) ("After granting his motion for judgment as a matter of law, the district court held that the alternative motions were moot. This holding was error.").

issues an appellate court did not address.'"[31]  However,

> [w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue. . . . This mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate.[32]

## IV.   LEGAL STANDARD

"Rule 59 [of the Federal Rules of Civil Procedure] provides the mechanism by which a court can (1) set aside a verdict and order a new trial; or (2) reconsider a prior entry of judgment."[33]  Pursuant to this rule,

> [t]he trial judge has "discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence." . . . This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur).[34]

Two subsections of Rule 59 are applicable here.

---

[31]     *Sompo Japan Ins. Co. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175-76 (2d Cir. 2014) (quoting *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003)).

[32]     *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (quotation marks and citations omitted).

[33]     2 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary Rule 59* (2016).

[34]     *Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996)) (further quotation omitted).

A.      **Rule 59(a) Motion for a New Trial**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court "'may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.'"[35]  However, "a court considering a Rule 59 motion for a new trial must bear in mind that the court should only grant such a motion when the jury's verdict is egregious."[36]  Thus, "'[a] motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'"[37]

"The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive."[38]  To order a new trial based

---

[35]     *Lawson v. County of Suffolk*, 920 F. Supp. 2d 332, 339 (E.D.N.Y. 2013) (quoting Fed R. Civ. P. 59(a)(1)(A)).

[36]     *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (citation omitted).

[37]     *Lawson*, 920 F. Supp. 2d at 339 (quoting *DLC*, 163 F.3d at 133) (further quotation omitted).

[38]     *Id.* (citing 12 James W. Moore, *Moore's Federal Practice* § 59.13 (3d ed. 2005)).

-14-

on the admission or rejection of evidence at trial, the challenged evidentiary rulings must have been "a clear abuse of discretion *and* . . . so clearly prejudicial to the outcome of the trial that [the court is] convinced [that] . . . a seriously erroneous result or . . . miscarriage of justice" occurred.[39]

### B.      Rule 59(e) Motion for Remittitur

Alternatively, "[u]nder Rule 59(e) of the Federal Rules, a court can grant a motion to alter or amend a judgment 'to correct a clear error of law or prevent manifest injustice.'"[40]  Pursuant to this authority, the trial court is empowered to "enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial."[41]  "'It is not[, however,] among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial.'"[42]

---

[39]      *Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005) (emphasis in original) (quotation marks and citation omitted).

[40]      *Guzman v. Jay*, 303 F.R.D. 186, 197 (S.D.N.Y. 2014) (quoting *Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)) (further quotation omitted).

[41]      *Kirsch*, 148 F.3d at 165.

[42]      *Miller v. City of Ithaca, New York*, No. 10 Civ. 597, 2015 WL 9223755, at *5 (alteration in original) (quoting *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995)).

Thus, "[w]hile calculating damages is traditionally the province of the jury, the Second Circuit has held that an award can be amended or set aside as 'excessive'" in at least two circumstances:[43]

> (1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, . . . and (2) more generally, where the award is "intrinsically excessive" in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.[44]

"Where there is no particular discernable error, [the Second Circuit has] generally held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'"[45] "A verdict shocks the judicial conscience 'only if it surpasses an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable persons may differ, but a question of law.'"[46] "In making this determination, courts canvass the amounts awarded in 'comparable cases' and

---

[43]     *Guzman*, 303 F.R.D. at 197 (quoting *Kirsch*, 148 F.3d at 165).

[44]     *Kirsch*, 148 F.3d at 165 (further quotations omitted).

[45]     *Id.* (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988)) (further quotation omitted).

[46]     *Guzman*, 303 F.R.D. at 197 (quoting *Ahlf v. CSX Transp., Inc.*, 386 F. Supp. 2d 83, 87 (N.D.N.Y. 2005)) (further quotation omitted).

determine whether the award falls within the 'reasonable range.'"[47]  "The key is comparability:  whether the counterpart cases involve analogous facts, similar measures of damages, and are otherwise fairly congruent."[48]  The Second Circuit has "stress[ed], however, that [this] task is not [simply] to balance the number of high and low awards and reject the verdict if the number of lower awards is greater."[49]  Further, "in making a determination as to excessiveness, the court 'is free to weigh the evidence and need not view it in the light most favorable to the verdict winner.'"[50]

## V.  DISCUSSION

### A.  Jurisdiction Over Rule 59 Motions[51]

As a threshold matter, Newton contends that this Court should not address the merits of defendants' Rule 59 motions because it lacks jurisdiction to do

---

[47]  *Id.* (quoting *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012)).

[48]  *Limone v. United States*, 579 F.3d 79, 104 (1st Cir. 2009).

[49]  *Ismail v. Cohen*, 899 F.2d 183, 187 (2d Cir. 1990).

[50]  *Miller*, 2015 WL 9223755, at *5 (quoting *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-35 (2d Cir. 2002)) (further quotation omitted).

[51]  Post-remand, these issues were addressed in letter-briefs filed by the parties.  *See* Dkt. Nos. 230-234.  Oral argument was held before this Court on January 22, 2016.

so.[52]  *First*, Newton argues that defendants abandoned these motions in failing to pursue them before or on appeal.  *Second*, Newton argues that the mandate rule proscribes a post-remand decision on these motions.  I address each argument in turn, and find that I am not precluded from rendering a decision on the pending motions.

### 1.   Abandonment

There is no dispute that this Court erred in its May 12, 2011 Decision by not conditionally ruling, as required by Rule 50(c)(1), on defendants' Rule 59 motions.  Rather, Newton argues that defendants have abandoned their right to a decision on these motions because they neither sought a conditional ruling from the district court after the May 12, 2011 Decision (either through a motion for reconsideration or other means) nor argued on appeal that the district court erred in not making a conditional ruling.  In support of this position, Newton avers that at least three other circuits — the Fifth, Seventh, and Eleventh — have deemed Rule 59 motions abandoned under similar circumstances.[53]  Defendants respond that the

---

[52]     On February 8, 2016, this Court submitted a "Request to Second Circuit For Clarification of Mandate" on these issues.  *See* Dkt. No. 236.  On February 10, 2016, the Second Circuit issued an Order declining to provide clarification of its Mandate.  *See* Dkt. No. 237.

[53]     *See, e.g.*, *Christopher v. Florida*, 449 F.3d 1360 (11th Cir. 2006); *Arenson v. Southern Univ. Law Center*, 43 F.3d 194 (5th Cir. 1995); *Oberman v. Dun & Dun & Bradstreet, Inc.*, 507 F.2d 349 (7th Cir. 1974).

Second Circuit — along with other circuits — has not ruled on the issue of Rule 59 abandonment.[54]  Additionally, defendants argue that the First Circuit has rejected the concept of abandonment.[55]

Broadly speaking, both parties' characterizations are accurate:  although several circuits have deemed Rule 59 motions abandoned in certain situations, the Second Circuit and others have not.  An examination of the case law, text of Rule 50, and policy considerations on both sides leads me to conclude that defendants are entitled to a post-remand ruling on their pending Rule 59 motions.

Of the circuits that have squarely confronted the issue, at least the Eleventh and Fifth have found abandonment where, as here, the "Defendant fails to pursue his motion for a new trial with the district court after the court grants JMOL without making the alternative ruling required by Fed.R.Civ.P. 50(c)(1), and the

---

[54]     Defendants maintain that the Second Circuit's ruling in *Grant v. Hazlett Strip-Casting Corporation* did not decide the issue of Rule 59 abandonment.  *See* 880 F.2d 1564 (2d Cir. 1989).

[55]     *See Jennings*, 499 F.3d 2.

Defendant fails to argue for a new trial ruling on appeal."[56, 57]   Although not all such opinions include reasoning on this point, the Fifth Circuit has indicated that its approach curtails "the delay and waste of judicial resources that can occur if parties are allowed to resuscitate dormant motions for new trial after the appeals court has once considered a judgment."[58]

Other circuits, by contrast, have either squarely rejected or not confronted this issue.  Of these circuits, the First Circuit has taken the strongest position in rejecting abandonment.  In *Jennings v. Jones*, the First Circuit was presented with a situation in which the defendant failed to obtain a conditional ruling from the district court or argue for a new trial on appeal.[59]  Originally, the First

---

[56]     *Christopher*, 449 F.3d at 1365 n.3.  *Accord Arenson*, 43 F.3d at 196 ("[W]hen the defendants failed to seek a ruling from the district court on their motion for new trial and failed to mention the new trial motion on appeal, they abandoned the motion.") (citing *Johnstone v. American Oil Co.*, 7 F.3d 1217, 1224 (5th Cir. 1993)).

[57]     The Seventh Circuit appears to have gone further, finding abandonment simply "if [the failure to issue a conditional ruling is] not pressed on the trial court after the grant of judgment n.o.v." — regardless of whether the issue was raised on appeal.  *Oberman*, 507 F.2d at 353.  I need not address the applicability of abandonment under this lesser scenario, as defendants here failed to secure a conditional ruling from either the trial or appellate courts.

[58]     *Arenson*, 43 F.3d at 196.

[59]     *See Jennings v. Jones*, 479 F.3d 110 (1st Cir. 2007) *reh'g granted, opinion withdrawn*, 499 F.3d 1 (1st Cir. 2007) and *on reh'g*, 499 F.3d 2.

Circuit adopted the Fifth, Seventh, and Eleventh Circuits' position and deemed the defendant's motion to be abandoned.[60]  Upon rehearing, however, "the revised panel opinion withdr[ew] its ruling that the appellant [had] waived or forfeited his right to a ruling on his conditional new trial motion" and remanded the case so that the motion could be decided in the trial court.[61]

Similarly, when faced with a trial court's failure to conditionally rule, the Third Circuit has remanded the motion for a decision on its merits.  In *Rhone Poulenc Pharmaceuticals v. Newman Glass Works*, the Third Circuit explained that "based on the grounds raised in the new trial motion and lack of any trial record or argument before [the appellate court] on the issue, . . . prudence militates in favor of a remand so that the district court may consider [the motion]."[62]

Although the Second Circuit has not directly addressed the question of Rule 59 abandonment, I am not without its guidance.  At least two Second Circuit cases suggest that *had* this Court's failure to conditionally decide the Rule 59 motions been addressed on appeal, the Second Circuit would have remanded them — as the First and Third Circuits have done — to be decided by this Court in the

---

[60]     *See Jennings*, 479 F.3d 110.

[61]     *Jennings*, 499 F.3d 1 at 1-2.

[62]     112 F.3d 695, 699 (3d Cir. 1997).

first instance.

   The first of these cases is *Grant v. Hazelett Strip-Casting Corporation*, in which the trial court neglected to issue a conditional ruling when granting defendant's motion for judgment notwithstanding the verdict.[63]  On appeal, the Second Circuit observed that "appellate courts often remand such cases to the trial court for reconsideration of the motion for a new trial."[64]  Nevertheless, the Second Circuit noted that such a "remand is not automatic" and thus elected, "under the circumstances of th[at] case," to itself deny the motion for a new trial that had not been decided.[65]  In so ruling, however, *Grant* acknowledged that the Seventh Circuit had found abandonment when a "motion for new trial . . . i[s] not pursued following entry of judgment n.o.v."[66]  In other words, *Grant* implicitly rejected the concept of abandonment and endorsed the approach of "remand[ing] such cases" for a Rule 59 decision.[67]

   More recently, in *Conte v. County of Nassau*, the Second Circuit addressed a related situation in which a trial court failed to conditionally rule but a

---

[63]  *See* 880 F.2d at 1571.

[64]  *Id.*

[65]  *Id.*

[66]  *Id.* (citing *Oberman*, 507 F.2d 349).

[67]  *Id.*

party brought this failure to the Court's attention on appeal.[68]  The Second Circuit

remanded the case so that the Rule 59 motion could be decided by the trial court.[69]

Such precedent indicates that if this Court rules on defendants' Rule 59 motions at

this stage, doing so will be consistent with the Second Circuit's practice and will not

extend this litigation beyond what would have been required had these motions been

argued on appeal.[70]

Further, although the Rule 59 motions were not litigated on appeal, the

Second Circuit was on notice that these motions had never been decided (and

nonetheless declined to address them or otherwise direct this Court as to their

resolution on remand).  As such, I must conclude that had the Second Circuit

intended to deem defendants' Rule 59 motions abandoned, it would have done so.

Specifically, this Court's May 12, 2011 Decision — which was included in the

appellate record — expressly declined to rule on the Rule 59 motions.[71]

Additionally, defendants' Opposition Brief on Appeal explained, with respect to the

---

[68]     596 Fed. App'x 1.

[69]     *See id.* at 7.

[70]     In fact, it is most efficient for this Court to now fulfill its Rule
50(c)(1) obligation and rule on the pending Rule 59 motions.  In the event of an
appeal, the Second Circuit will be able to review the procedural and substantive
issues addressed by this Opinion at one time.

[71]     *Newton*, 784 F. Supp. 2d at 473 n.5.

post-trial proceedings below, that:  "[a]lternatively, defendants [had] moved for a

new trial or remittitur of the damages award."[72]

The text of Rule 50 also militates against finding abandonment.  It is

well-settled that courts are to "'give the Federal Rules of Civil Procedure their plain

meaning.'"[73]  Although Rule 50 requires trial courts to "conditionally rule on any

motion for a new trial by determining whether a new trial should be granted if the

judgment is later vacated or reversed," it is silent as to litigants' obligations in the

event that the trial court fails to make a conditional ruling.[74]  By contrast, other

provisions of the Federal Rules of Civil Procedure expressly provide for waiver

based on certain conduct by the parties.[75]  Accordingly, it is against the plain

meaning of Rule 50 to interpret Rule 50(c)(1) as including an implied waiver.

Given the state of the law, it follows that there would be a fundamental

unfairness in deeming defendants' Rule 59 motions abandoned.  Defendants,

litigating within the Second Circuit, cannot be expected to have anticipated being

---

[72]     2/14/12 Opposition Brief for Defendants-Appellees at 6 (2d Cir. Dkt.
No. 120).  The Second Circuit also had access to the text of Rule 50(c)(1) and
numerous other cases in which the trial court failed to conditionally rule.

[73]     *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (quoting *Business
Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540-41 (1991)).

[74]     Fed. R. Civ. P. 50(c)(1).

[75]     *See, e.g.*, Fed. R. Civ. P. 12(h) (waiving defenses).

held to a rule regarding abandonment that the Second Circuit had not adopted.

Further, the Second Circuit does not have a blanket rule requiring parties to seek

reconsideration of erroneous trial court rulings.  Nor does the Second Circuit require

appellees (as defendants were, having prevailed on their Rule 50(b) motion) to brief

issues not raised by the appellant or file cross-appeals.  And although Newton

certainly has a significant interest in the resolution of this litigation, he too failed to

avail himself of earlier opportunities to alert the trial and/or appellate courts to the

Rule 50(c)(1) oversight.  For these reasons, this Court will not shift the burden of its

error in not conditionally ruling onto defendants.

### 2.    The Mandate Rule

Alternatively, Newton argues that the mandate rule — which governs

the trial court's "duty to follow the appellate court's ruling on . . . issues" resolved

on appeal — precludes this Court from deciding defendants' Rule 59 motions on

remand.[76]  This argument fails, however, as these open motions were neither

expressly nor impliedly resolved by the Second Circuit.[77]

---

[76]     *Brown*, 673 F.3d at 147 (quotation marks and citations omitted).

[77]     *See Sompo Japan Ins. Co. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175-76
(2d Cir. 2014) ("'A mandate is controlling only as to matters within its compass.'")
(quoting *New England*, 352 F.3d at 606); *Brown*, 673 F.3d at 147 (2d Cir. 2012)
(explaining that the mandate rule "prevents re-litigation in the district court . . . of
matters expressly decided by . . . [or] impliedly resolved by the appellate court's
mandate") (quotation marks and citations omitted).  However, as discussed *infra* at

There is no question that the Rule 59 motions were not expressly resolved on appeal:  as explained, the Second Circuit did not discuss them in either the Opinion or Mandate vacating this Court's May 12, 2011 Decision.  Nor can it be said that these rulings address, even impliedly, any limitations on this Court's authority to adjudicate pending issues upon remand.[78]  In fact, the Mandate remands this case with instructions to reinstate the Fourteenth Amendment jury verdict *and* reconsider Newton's First Amendment Claim — indicating that the Second Circuit contemplated further post-remand proceedings, not simply an automatic entry of judgment.  As such, the mandate rule — while certainly applicable to those issues in this case that were resolved on appeal — does not relieve this Court of its obligation to rule on the Rule 59 motions that remain pending.

### B.    Rule 59 Motions[79]

---

Section V(B)(1), certain arguments made *within* defendants' Rule 59(a) motion are precluded by the Second Circuit's ruling.

[78]    *See Brown*, 673 F.3d at 148.

[79]    As explained, defendants' Rule 59(a) and (e) motions were briefed together, and this Court's May 12, 2011 Decision declined to conditionally rule on either motion.  Between January 15, 2016 and February 12, 2016, defendants' post-remand position appeared to be that they sought a ruling only on their pending Rule 59(e) motion.  *See* Dkt. Nos. 230-235.  On February 12, 2016, however, defendants filed a letter containing arguments from their Rule 59(a) motion.  *See* Dkt. No. 239.  In light of this timing, Newton asks that the Court ignore defendants' Rule 59(a) arguments and entertain only their Rule 59(e) motion.  I am compelled, however, to decide the Rule 59(a) motion alongside the Rule 59(e)

Having determined that defendants' Rule 59 motions can be decided on remand, I address their merits.

### 1.       Rule 59(a) Motion for a New Trial

Defendants' Rule 59(a) motion argued three bases for the grant of a new trial:  (1) that the jury verdict was seriously erroneous because Newton failed to establish liability on either the Section 1983 or IIED claims; (2) that certain evidentiary rulings, outlined below, prejudiced defendants and constituted an abuse of discretion; and (3) that the jury charge was erroneous and not harmless error.[80]

The first and third of these arguments were rejected by the Second Circuit, thereby precluding their re-litigation on this motion.[81]  As to defendants' first argument, the issue of defendants' Section 1983 liability was resolved in Newton's favor on appeal[82] (and the IIED verdict is no longer at issue as Newton did

---

motion (to the extent that these motions have not been resolved by the Mandate), as both have been fully briefed since December 21, 2010.  Notably, any short delay by defendants in renewing their Rule 59(a) arguments does not prejudice Newton given that this Opinion decides both Rule 59 motions and finds for Newton with respect to the Rule 59(a) motion.

[80]      *See* Defendants' Memorandum of Law in Support of Motion for Judgment as a Matter of Law and Other Relief Pursuant to Rules 50 and 59 ("Defs. Mem.") at 21-22.

[81]      *See Brown*, 673 F.3d at 148 (explaining the mandate rule).

[82]      *See Newton*, 779 F.3d at 156.

not appeal this Court's decision to set it aside).  Likewise, as to defendants' third

argument, the Second Circuit ruled that the "challenged jury instructions were not

wrong."[83]

This leaves only defendants' second argument for a new trial, regarding

the admission or exclusion of certain evidence at trial.  Defendants' Rule 59(a)

motion objects to three evidentiary rulings:

> (1) [the] denial of the City's motion to admit evidence of Newton's
> prior conviction [for attempted rape of a minor] . . . even after
> Newton opened the door to such evidence [during the damages
> phase] . . . ; (2) [the] admission of evidence concerning the City's
> alleged failure to train or supervise employees . . . , for which the
> City cannot be held liable . . . ; and (3) [the] admission of evidence
> regarding searches for evidence that post-dated Newton's request
> for the rape kit, . . . which were inadmissible to prove prior notice
> [to the City regarding its evidence management deficiencies].[84]

Because the latter two of these rulings relate to defendants' Section 1983 liability, an

issue that has been resolved by the Second Circuit,[85] they cannot be revisited on

remand.[86]

---

[83]     *Id.* at 158.

[84]     Defs. Mem. at 21-22.  *See also* Defendants' Memorandum of Law in
Support of Motions in Limine at 9-10 (seeking exclusion of failure to train
evidence), 13-14 (seeking exclusion of later searches for evidence), 17-19 (seeking
admission of the E.G. Conviction) (Dkt. No. 155).

[85]     *See Newton*, 779 F.3d at 154 n.11; *id.* at 156.

[86]     *See Brown*, 673 F.3d at 148.

By contrast, the first challenged ruling — which prevented the jury from knowing that the E.G. Conviction involved attempted rape of a minor — *is* reviewable at this stage because it concerns the amount of damages, an issue that the Second Circuit did not address.  Defendants argue that this evidence was improperly excluded because Newton's damages testimony — during which he stated that his sex offender status made him a target while in prison — should have allowed defendants to introduce the underlying facts of the E.G. Conviction for impeachment purposes.  Specifically, defendants contend that they should have been permitted to demonstrate that Newton's fears of inmate reprisal as a sex offender were not solely related to the wrongful V.J. Conviction.

To warrant a new trial, however, this evidentiary exclusion must have been "a clear abuse of discretion and . . . so clearly prejudicial to the outcome of the trial that [the court is] convinced [that] . . . a seriously erroneous result or . . . miscarriage of justice" occurred.[87]  It cannot be said that the ruling here resulted in any such injustice.

Rather, the exclusion was necessary and appropriately tailored so as to prevent substantial prejudice at trial.  The nature of the E.G. Conviction is not only

---

[87]     *Nimely*, 414 F.3d at 399 (quotation marks and citation omitted).

highly inflammatory but also was not probative of Newton's truthfulness.[88]  Further, given the similarity between the E.G. and V.J. Convictions, introducing the underlying facts of the E.G. Conviction also posed a risk of jury confusion.[89] Significantly, this Court admitted other details at trial which alerted the jury to the gravity of the E.G. Conviction (including that the conviction involved a Class C felony, was not overturned, and required Newton to serve a ten-year sentence).  In fact, during the damages phase of trial, defense counsel used most of his cross-examination of Newton to emphasize the existence of the prior E.G. Conviction.[90, 91] For these reasons, defendants' Rule 59(a) motion for a new trial is denied.

---

[88]  *See* Fed. R. Evid. 609(b).  Defendants' Rule 59(a) motion also argued that they should have been permitted to introduce the E.G. Conviction because Newton had made prior public misstatements about it.  Adhering to my original ruling, these statements were insufficiently probative to override the substantial risk of prejudice if the evidence was admitted.

[89]  *See* Fed. R. Evid. 403.

[90]  *See generally* 10/19/10 Tr. at 2497:7-2501:14.

[91]  I also note that although the Second Circuit routinely reviews trial court evidentiary rulings — unlike, perhaps, trial court failures to make Rule 50(c)(1) conditional rulings — defendants did not raise this evidentiary objection on appeal.  *See United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand."); *see also Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (discussing standard of review when evidentiary rulings are challenged on appeal).

### 2.    Rule 59(e) Motion for Remittitur

Defendants' alternative Rule 59(e) motion sought a reduction of the jury's eighteen million dollar Section 1983 award on the basis that "the award [wa]s so high as to shock the judicial conscience and constitute a denial of justice."[92]  On this issue, Newton responds that the amount of his Section 1983 award is not excessive but instead within the reasonable range of outcomes in similar suits.

As an initial matter, I note that the parties have articulated the applicable standard of review:  this Court must evaluate whether Newton's Section 1983 award "shock[s] the judicial conscience" given that there is "no particular discernable error" that "caused the jury to include in the verdict a quantifiable amount that should be stricken."[93]  To make this determination, the Court must consider whether Newton's award falls within the reasonable range of awards from comparable cases.[94]

---

[92]    Defs. Mem. at 23.  I do not address the portion of defendants' Rule 59(e) motion seeking remittitur of the IIED award because, as explained, that award was set aside by the May 12, 2011 Decision and no appeal was taken to reinstate it.

[93]    *Kirsch*, 148 F.3d at 165 (quotation marks and citations omitted).

[94]    *See Guzman*, 303 F.R.D. at 197.  In arguing for remittitur, defendants additionally posited that Newton's counsel impermissibly suggested a damages figure in his summation to the jury.  However, the Second Circuit allows attorneys to suggest dollar amounts to the jury where, as here, the jury receives an appropriate limiting instruction.  *See Lightfoot v. Union Carbide Corp.*, 110 F.3d

### a.      Timing of Comparable Cases

As a preliminary matter, the current procedural posture of this case —
which calls for a decision on defendants' Rule 59(e) motion more than five years
after its filing — presents an apparently uncharted hurdle:  in comparing the
challenged jury award with similar cases, can the Court's evaluation incorporate
awards that post-date the original Rule 59(e) briefs?

Although no case law addresses this precise question, other areas of the
law offer guidance on this point and lead me to conclude that post-briefing cases
should be considered in deciding this motion.  The "shocks the conscience" standard
finds parallels in well-established concepts such as the Eighth Amendment's
"evolving standards of decency"[95] and appellate courts' de novo review of lower
court decisions — concepts which call for evaluation based on contemporary judicial
standards.

Further, the very concept of remittitur — which requires the plaintiff to
accept either a reduced award or the gamble of a new trial — necessarily asks the

---

898, 912 (2d Cir. 1997) ("It is best left to the discretion of the trial judge, who may
either prohibit counsel from mentioning specific figures or impose reasonable
limitations, including cautionary jury instructions.").  *See also Ramirez v. New
York City Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997) ("[T]his court
has not adopted a ban on suggestions of damages amounts.").

[95]      *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

-32-

plaintiff to weigh the reduced award against the amount that he believes a new (*i.e.*, present-day) jury would award.  It is also telling that courts do often consider cases from a wide temporal band in assessing comparable verdicts.[96]  Therefore, I conclude that I must consider all comparable recoveries — including those from more recent cases — in order to determine whether Newton's award "shocks [my] judicial conscience" today.[97, 98]

---

[96]     *See, e.g.*, *Limone v. United States*, 497 F. Supp. 2d 143 (D. Mass. 2007) (canvassing wrongful conviction awards issued between 1987 and 2006), *aff'd*, 597 F.3d 79 (1st Cir. 2009).

[97]     *Guzman*, 303 F.R.D. at 197.  However, because Newton is entitled to interest since his jury verdict was rendered in 2010, awards from comparable cases will be adjusted for inflation or deflation, as necessary, against their 2010 buying power.  *See DiSorbo v. Hoy*, 343 F.3d 172, 185 (2d Cir. 2003) (explaining the role of inflation in the remittitur analysis).  To estimate 2010 dollar equivalents, this Court follows the approach taken by other courts in this Circuit and uses the "Inflation Calculator" provided by the United States Department of Labor's Bureau of Labor Statistics.  *See* United States Dep't of Labor, "CPI Inflation Calculator," http://www.bls.gov/data/inflation_calculator.htm.  *See Tatum v. Jackson*, 668 F. Supp. 2d 584, 603 n.18 (S.D.N.Y. 2009) (collecting remittitur cases that have used the CPI calculator).

[98]     On remand, both parties supplemented their Rule 59(e) briefing with more recent jury verdicts and settlement awards from other wrongful conviction cases.  This Opinion does not, however, consider settlement awards in evaluating the reasonableness of Newton's jury award because "settlement values . . ., by definition, implicate compromise" and therefore cannot be compared with jury verdicts.  *Limone*, 579 F.3d at 104.  *Accord Neyer v. United States*, 845 F.2 641, 645 (6th Cir. 1988) ("We find no realistic analogy between a determination of damages . . . after a full scale trial and a settlement figure reached in another case without a trial.").

### b.    Evaluation of Award

I turn now to the question of whether Newton's Section 1983 award does, in fact, shock the judicial conscience.  Comparing other relevant awards with the particular facts of this case, I conclude that it does.  This decision is not issued lightly.  It is reached, as Rule 59(e) requires, based on a rigorous factual examination of the authorities.

To orient this discussion, however, it is useful to recite the relevant facts of Newton's Section 1983 award.  Newton was convicted in May 1985 on two independent sexual assault felonies (the V.J. and E.G. Convictions), for which he was sentenced to consecutive, indeterminate prison terms.  The V.J. Conviction carried a sentence of thirteen and one-third to forty years, rendering Newton eligible for parole approximately thirteen years into his incarceration for that offense.  Only the V.J. Conviction was overturned, approximately twenty-two years into Newton's incarceration.  Accordingly, Newton stipulated at trial that he served ten years for the lawful E.G. conviction and twelve years for his wrongful V.J. Conviction.  In this action for recovery as to the wrongful V.J. Conviction, Newton's Section 1983 claim was based on the City's "inadequate . . . system to account for . . . evidence, not on the destruction of evidence."[99]  At trial, Newton served as the sole witness on

---

[99]    *Newton*, 779 F.3d at 158.

damages, and he sought compensation only for his pain and suffering during his twelve years of wrongful incarceration.

I now review a number of comparable cases. *Limone v. United States* — a 2007 case which awarded one million dollars per year of incarceration to four exonerees sentenced to life imprisonment or death for murder — offers significant guidance as to the excessiveness of Newton's award of *$1.5 million* per year.[100] Newton's incarceration, while indisputably painful, is distinguishable from that of the *Limone* plaintiffs in several critical respects.

*First*, the *Limone* plaintiffs served markedly more extreme sentences than Newton.  Thus, in arriving at its award, *Limone* recognized that death and life imprisonment are among the harshest and most emotionally trying sentences that one can receive — observing, "[d]eath row is death row" and that "life imprisonment is life imprisonment — not a term of years."[101]  By contrast, Newton's indeterminate sentence allowed for the possibility of parole as early as thirteen and one-third years into his sentence.

*Second*, although (like Newton) the *Limone* plaintiffs served part of

---

[100]     *Limone*, 497 F. Supp. 2d 143.  The First Circuit affirmed the *Limone* awards but observed that they were "considerably higher than any one of us, if sitting on the trial court bench, would have ordered."  *Limone*, 579 F.3d at 84.

[101]     *Limone*, 497 F. Supp. 2d at 245.

their incarcerations for independent convictions that were not overturned, their wrongful convictions severely intensified the conditions of their imprisonment.[102] In *Limone*, the plaintiffs' lawful convictions (for gambling and interstate transport of stolen goods) were dramatically less serious than the convictions that were overturned (murder).[103]  Thus, the *Limone* court reasoned, the plaintiffs' wrongful convictions subjected them to "far harsher conditions" and "dramatically change[d] the picture" of their incarcerations.[104]  For Newton, however, his lawful E.G. Conviction — for attempted rape, a Class C felony — was substantially similar to his wrongful conviction and therefore unlikely to have had such a dramatic impact on the nature of his incarceration.

*Third*, the wrongful convictions in *Limone* were the result of shockingly egregious governmental action:  "intentional misconduct, subornation of perjury, conspiracy, [and] the framing of innocent men"[105] — a level of misconduct not present in this case, which was based on defendants' poorly-administered evidence management system.[106]  Further, *Limone*'s award of one million dollars per year is

---

[102]   *See id.*

[103]   *See id.*

[104]   *Id.*

[105]   *Id.* at 153.  *Accord id.* at 245.

[106]   *See Newton*, 779 F.3d at 155.

particularly instructive because it was rendered in a bench trial and thus, was grounded in the court's survey of comparable verdicts.[107]

Verdicts in other comparable cases have centered around one million dollars or less per year of wrongful incarceration — providing further evidence as to the excessiveness of the jury award in this case. For example, in *Restivo v. Nassau County*, the plaintiffs — whose rape convictions similarly were overturned by DNA evidence — were awarded eighteen millions dollars in 2014 for eighteen years of wrongful incarceration (or approximately $920,000 per year in 2010 dollars).[108] In *Waters v. Town of Ayer*, the plaintiff was awarded $10,729,000 for approximately eighteen-and-a-half years' incarceration (which amounts to approximately $600,000

---

[107]   Defendants posited that *Limone* is inapplicable because (1) New York City (where Newton resides) has a higher cost of living than Boston (a city within the First Circuit, where *Limone* was decided) and (2) adjusting for inflation, the *Limone* awards were worth more than one million dollars per year in 2010. Although the Court is sympathetic to these financial realities, a similar argument was rejected by the First Circuit in *Limone*, which observed that the losing party's "parochial insistence that the lower court should have restricted any inquiry to cases that arose within the borders of Massachusetts is incorrect as a matter of law." 579 F.3d at 104. Further, even accounting for inflation, the *Limone* awards — worth approximately $1.05 million per year in 2010 and compensating significantly aggravated circumstances of incarceration — nevertheless support the conclusion that Newton's award should not have exceeded one million dollars per year.

[108]   No. 06 Civ. 6720, 2015 WL 5796966 (E.D.N.Y. Sept. 30, 2015). *Accord* Joseph Berger, *2 Men Get $18 Million Each in Wrongful Conviction Case*, N.Y. Times (Apr. 18, 2014), http://nyti.ms/1eGaAXo.

per year in 2010 dollars).[109]  This award, unlike Newton's, included compensation for physical illnesses and injuries resulting from the wrongful incarceration.[110]  A survey of other similar cases provides further indication that an award of one million dollars per year of incarceration constitutes the upper boundary for a reasonable award under the circumstances presented by this case.[111]

On remand, Newton offers several cases for the proposition that $1.5 million per year nevertheless is reasonable compensation for the circumstances of his case.[112]  However, all of these cases are factually distinguishable — most of

---

[109]     No. 04 Civ. 10521, 2009 WL 3489372 (D. Mass. Sept. 17, 2009).

[110]     *See id.* at *3.

[111]     *See Connick v. Thompson*, 563 U.S. 51, 54 (2011) (observing that jury had awarded fourteen million dollars for eighteen years' wrongful incarceration, including fourteen years spent on death row); *Singletary v. District of Columbia*, 766 F.3d 66, 70 (D.C. Cir. 2014) (observing that jury had awarded $2.3 million for ten years of confinement on wrongful parole revocation); *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003) (observing that jury had awarded fifteen million dollars for fifteen years' incarceration on wrongful murder conviction); *Jenkins v. Baldwin*, 801 So. 2d 485, 491 (La. App. 2001) (declining to reach issue of excessiveness of twelve million dollar state court verdict for thirty years' incarceration).  *Cf. Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012) (ruling that jury award of "only $73,125 in compensatory damages . . . for the eight years he was wrongly imprisoned" was "astoundingly low for cases of wrongful conviction," particularly as the plaintiff had "presented the court with evidence indicating that the average jury award was nearly $950,000 per year of wrongful imprisonment, with a median of nearly $790,000 per year").

[112]     *See* 1/29/16 Letter from Plaintiff's Counsel John Schutty to the Court (Dkt. No. 234).

-38-

which on the basis that they included aggravating factors not present for Newton.

For example, Newton cites *Jimenez v. City of Chicago*, in which the jury awarded the plaintiff twenty-five million dollars for sixteen years' wrongful imprisonment (which amounts to slightly more than $1.5 million per year in 2013 dollars or the slightly lesser amount of $1.4 million per year in 2010 dollars).[113] However, the wrongful incarceration addressed in *Jimenez* is markedly different from Newton's incarceration in at least two ways.  *First*, the *Jimenez* plaintiff was tried and convicted as an adult at the age of fifteen, serving his entire sixteen years in adult prison.[114]  It cannot be ignored that a juvenile placed in adult prison is likely to experience particularly severe trauma.  *Second*, no part of the *Jimenez* plaintiff's sentence was for a lawful conviction — and thus, the *Jimenez* plaintiff lacked any "lawful" time during which he might have acclimated to prison life.[115]

Likewise, the award in another case cited by Newton — *Dominguez v. Hendley* — is again distinguishable due to the plaintiff's youth and lack of criminal

---

[113]    732 F.3d 710 (7th Cir. 2013).

[114]    *See id.* at 714.

[115]    *See Green v. Baca*, 226 F.R.D. 624, 657 (C.D. Cal. 2005) (collecting cases which recognize that "a person who has previously been incarcerated may suffer less damage as a result of a subsequent wrongful incarceration").

history at the time of his wrongful conviction.[116]  In *Dominguez*, the plaintiff was

convicted of sexual assault at the age of fifteen but ultimately exonerated by DNA

evidence.[117]  He served four years for this conviction — the majority of this period

as a minor and with no prior criminal record — and was ultimately awarded nine

million dollars in 2008 (or approximately $2.25 million per year of incarceration) in

compensation.[118]

The award in *Smith v. City of Oakland* also is inapposite because it

addressed an extremely short period of incarceration.[119]  In *Smith,* the plaintiff was

subjected to a humiliating arrest and thereafter wrongfully convicted and

incarcerated for four-and-a-half months.[120]  The jury originally awarded the plaintiff

---

[116]   545 F.3d 585 (7th Cir. 2008).

[117]   *Id.* at 588.

[118]   *See id.*  Newton also cites the high profile case of Jeffrey Deskovic, who was convicted at the age of sixteen for rape and murder — largely on the basis of a coerced confession.  *See* Fernanda Santos, *DNA Evidence Frees a Man Imprisoned for Half His Life*, N.Y. Times (Sept. 21, 2006), http://www.nytimes.com/2006/09/21/nyregion/21dna.html. In Deskovic's civil suit, the jury awarded him twenty-five million dollars in compensatory damages for seventeen years of wrongful incarceration.  *See* Jonathan Bandler, *Deskovic awarded $40M in wrongful conviction case*, Lohud (Oct. 24, 2014), http://lohud.us/1tPdtMH.  The Deskovic case is distinguishable, however, due to the plaintiff's youth, level of governmental misconduct involved, and media attention it received.

[119]   538 F. Supp. 2d 1217, 1240-41 (N.D. Cal. 2008).

[120]   *See id.*

five million dollars for the emotional distress he had suffered.  Subsequently, the

district court reduced the jury's award from five to three million dollars.[121]  In doing

so, the court observed that "[w]here the period of incarceration is shorter (e.g., less

than one year), proportionately larger awards (measured by annualizing the award)

have been rendered, presumably reflecting [the] observation that the injury from

incarceration may be more intense towards the beginning."[122, 123]

---

[121]     *See id.* at 1243.

[122]     *Id.* at 1242 (collecting cases).  *Smith* is also instructive regarding the
stigma that Newton reportedly experienced while in prison as a result of his status
as a convicted sex offender.  *Smith* observed that "[t]he facts [of *Smith*], while
compelling, do not warrant such an extraordinary result [as the original jury
award].  For instance, Mr. Smith was not . . . stigmatized by a wrongful conviction
of *e.g.*, rape." *Id.* at 1243.  The same is true, at least in part, for Newton because
any stigma he experienced while incarcerated is likely to have been based on his
lawful, as well as unlawful, sexual assault convictions.

[123]     Newton cites several additional cases that are of minimal relevance
because they involved short periods of unlawful custody.  For example, Newton
argues that a $75,000 Section 1983 award for "several days" of plaintiff's
incarceration should be interpreted as an annualized award of tens of millions per
year. *Gentile v. County of Suffolk*, 926 F.2d 142, 154 (2d Cir. 1991).  This is a
distortion of both the facts and implications of *Gentile*, which compensated
plaintiffs for "pain and suffering accompanying an extended period of prosecution,
several days of false imprisonment for one of the plaintiffs, psychological trauma
induced by the improper exercise of the police and prosecutorial apparatus, loss of
job opportunities owing to the effects of municipal harassment." *Id.*  Accordingly,
I cannot extrapolate what the *Gentile* plaintiffs would be entitled to had they
endured a longer period of incarceration.  *See also Gardner v. Federated Dep't
Stores*, 907 F.2d 1348, 1350 (2d Cir. 2001) (compensating approximately eight
hours of unwarranted confinement under state law); *Graham v. City of New York*,
No. 08 Civ. 3518, 2015 WL 5258741, at *26 (E.D.N.Y. Sept. 10, 2015)

Further, Newton points to *White v. McKinley*,[124] in which the plaintiff — falsely convicted of molesting his daughter — was awarded approximately $12.4 million in pain and suffering damages in 2010 for the five-and-a-half years he spent in prison (or approximately $2.5 million per year).[125]  In *White*, however, the damages evidence included, *inter alia*, the fact that the plaintiff had been physically abused while in prison.[126]  No such aggravating evidence was presented by Newton (but rather, Newton testified that he did not sustain any physical injuries while incarcerated).

Likewise, the 2009 verdict in *Johnson v. Guevera* — another case cited by Newton — does not offer a compelling comparison because it involved damages evidence that was not offered at Newton's trial.[127]  In *Johnson*, the plaintiff was awarded twenty-one million dollars in compensation for eleven-and-a-half years of incarceration (which amounts to approximately $1.82 million per year in 2009

---

(compensating "approximately one hour" of loss of liberty, physical injury, and past and future emotional harm).

[124]    605 F.3d 525 (8th Cir. 2010).

[125]    The jury awarded plaintiff a lump sum of fourteen million dollars in actual damages, which seems to have included $1.6 million in economic damages. *See White v. McKinley*, No. 05 Civ. 0203, 2009 WL 813001, at *22 (W.D. Mo. Mar. 26, 2009).

[126]    *See id.*

[127]    No. 05 Civ. 1042 (N.D. Ill.).

dollars or $1.85 million per year in 2010 dollars).[128]  It appears, however, that expert testimony was offered regarding Johnson's ongoing mental health problems.[129] Further, the *Johnson* verdict may have reflected the jury's valuation of the plaintiff's future, as well as past, harms — compensation that was categorically foreclosed for Newton because he sought only past pain and suffering for his years of wrongful incarceration.[130]

The Court recognizes that "[a]ssigning dollar amounts to pain and suffering is an inherently subjective determination."[131]  However, the Court also recognizes, as it must, that each case involves unique factual circumstances which bear on the reasonableness of the damages awarded.  Accordingly, in comparing the facts of Newton's incarceration with those of other wrongful incarceration cases, it is

---

[128]    *See id.* at Dkt. No. 285 ("Finding and Direction Pursuant to Rule 54(b)") (June 6, 2009).

[129]    *See id.* at Dkt. No. 213 (granting plaintiff's motion in limine regarding admission of expert psychological testimony at trial) (Apr. 29, 2009).

[130]    Newton also cites a 2006 decision awarding — without further explanation — two million dollars for pain and suffering prior to June 30, 1991 and eleven million dollars for damages after that date (including future damages) for nine-and-a-half years' imprisonment.  *See Sarsfeld v. City of Marlborough*, No. 03 Civ. 10319, 2006 WL 2850359 (D. Mass. Oct. 4, 2006).  The lack of information as to how this breakdown was calculated makes it impossible to compare this award with Newton's verdict.

[131]    *Dwyer v. Deutsche Lufthansa, AG*, 686 F. Supp. 2d 216, 221 (E.D.N.Y. 2010).

-43-

apparent that the eighteen million dollar award in this case — which falls within the upper-tier of wrongful incarceration awards — was excessive in light of the evidence submitted to the jury.

As the Court's review of comparable cases has indicated, where juries have awarded more than one million dollars per year of incarceration, they have generally done so in cases involving aggravating circumstances and evidence not present in Newton's case.  In particular, Newton's wrongful incarceration occurred while he was an adult, followed a decade of *lawful* incarceration for a similar felony, and was the result of "poor administration of [the City's] evidence management system," rather than egregious governmental misconduct.[132]  Further, at trial, Newton sought compensation only for his past pain and suffering, served as the sole witness on damages, and testified that he suffered no physical injury or abuse while in prison.

In sum, while the "shocks the judicial conscience" standard involves a review of verdicts (not settlements) from similar cases, the analysis cannot, at the end of the day, be based solely on mathematical calculations.[133]  Rather, the Court must consider other verdicts in the context of all circumstances in the case at issue — including a review of all of the evidence before the Court and jury during the trial —

---

[132]     *Newton*, 779 F.3d at 155.

[133]     *Guzman*, 303 F.R.D. at 197.

and then decide whether, in the exercise of her discretion, she believes that the jury award is excessive and should be reduced as a matter of fairness and justice to all of the parties in a litigation.  This is a heavy responsibility, and one that is rarely exercised — but in my view, under the totality of circumstances, this verdict requires remittitur.

Thus, I find that the compensatory damages in this case should not have exceeded one million dollars per year of imprisonment.  Wrongful convictions are a serious and intolerable aspect of the criminal justice system.  However, in this instance, the principles of justice require a reduction of the damages that were awarded.  For these reasons, defendants' Rule 59(e) motion is granted and Newton is order to accept either a reduced Section 1983 award in the amount of twelve million dollars, or a new trial on damages.[134]

## VI.    CONCLUSION

For the foregoing reasons, defendants' Rule 59(a) motion for a new trial is DENIED and defendants' Rule 59(e) motion for remittitur is GRANTED.  The

---

[134]    Newton has argued that a new trial on damages only would be unduly prejudicial because the new jury would not hear all of the evidence that had been presented on liability.  This argument is unavailing.  Rule 59 empowers this Court to order a new trial on "all or some of the issues."  Fed. R. Civ. P. 59(a).  Moreover, as discussed, the Second Circuit has resolved the issue of defendants' Section 1983 liability, thereby foreclosing re-litigation of this issue.  In the event of a new damages trial, this Court will compel, as necessary, the appearances of relevant witnesses.  *See* Fed. R. Civ. P. 45(c).

Court orders remittitur of Newton's Section 1983 award in excess of twelve million dollars.[135]  If Newton does not accept this reduced award within seven days from the date of this Opinion, a new trial will be ordered on the issue of damages.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 17, 2016

---

[135]      Newton is also entitled to the post-verdict interest that has accrued on these twelve million dollars since October 19, 2010 (the date of the jury's Section 1983 verdict). *See Restivo*, 2015 WL 5796966, at *2 (amending judgment, after denial of defendants' motion for a new trial, to include post-verdict interest accruing from the date of the jury's liability verdict).

**- Appearances -**

**For Plaintiff**:

John F. Schutty, III., Esq.
Law Office of John F. Schutty
271 Main Street, Second Floor
East Chester, NY 10709
(914) 202-0076

Eric J. Hecker, Esq.
Cuti Hecker Wang LLP
305 Broadway, Suite 607
New York, NY 10007
(212) 620-2602

David T. Goldberg, Esq.
Donahue & Goldberg LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
(212) 334-8813

**For Defendants**:

Arthur G. Larkin, III
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-1599